# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3924

_____

|  |  |  |
|---|---|---|
| General Motors Corporation, | * * * | |
| Plaintiff - Appellant, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Harry Brown's, LLC, | * * * * | |
| Defendant - Appellee. | * | |

_____

Submitted: March 12, 2009
Filed: April 16, 2009

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.


General Motors (GM) filed this declaratory judgment action and sought injunctive relief against Harry Brown's, LLC, one of its Minnesota dealerships, after Harry Brown's indicated it wanted to move a related Chrysler dealership onto its

property. The district court[1] denied GM's motion for a preliminary injunction. GM appeals, arguing that the district court abused its discretion and erred in finding that it had not established a likelihood of irreparable harm. We affirm.

I.

Harry Brown's, LLC is a GM dealership in Faribault, Minnesota that is owned and managed by Michael Brown. Harry Brown's sells Chevrolet, Cadillac, Buick, Pontiac, and GMC linemakes and until 2001 it also sold Dodge, a Chrysler product. In that year Michael's brother Steven opened Faribault Chrysler, LLC on an adjacent lot 600 feet away, took over the Dodge line from Harry Brown's, and added Chrysler and Jeep lines. Harry Brown's and Faribault Chrysler are wholly owned by Harry Brown's Inc., a family holding company, and the brothers consult each other on major business decisions. The accounting personnel and detailing services for both dealerships are housed in the "ABRA" building, which is located between the two showrooms. Faribault Chrysler began suffering financial losses in 2005, and in late 2007 the brothers determined that the only way to maintain the strength of the holding company was to operate both businesses at the original Harry Brown's location. This would reduce operating costs for both dealerships and allow the holding company to rent out the property previously used by Faribault Chrysler.

Under GM's standard Dealer Sales and Service Agreement,[2] Harry Brown's must obtain GM's approval before making changes to the dealership premises, such as adding new vehicle lines. Adding non GM linemakes is known as "dualing,"

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]Harry Brown's has five separate agreements with GM, one for each GM linemake it sells.

something GM has expressed disapproval of in published dealer bulletins and which it discourages by denying certain privileges to dealers that dual without prior written approval. The dealership agreement states that GM will evaluate a proposed change based on dealer network planning considerations and will approve or deny the request "pursuant to its business judgment."

Harry Brown's submitted a Change Request to GM in May 2008, proposing to relocate Faribault Chrysler's sales, service, and parts to the Harry Brown's lot. Under the proposal Chrysler and GM automobiles would be sold out of the same showroom until Harry Brown's could build a partition between the line areas. Harry Brown's submitted architectural plans it had produced for the separate showrooms. GM and Chrysler would still retain separate sales and service staff, and compensation for GM sales staff would continue to be based solely on sales of GM vehicles.

GM denied the dualing request, citing its policies against dualing, concerns that the combined operation would not satisfy GM facility requirements, and Harry Brown's below average customer satisfaction scores. GM also objected that there would no longer be customer contact areas dedicated only to its products, such as customer service and the customer lounge. Harry Brown's contested the accuracy of GM's assertions about the amount of space that would be available for GM sales, parts, and service after the Chrysler operations were moved. Harry Brown's also cited its own excellent sales record and high percentage of repeat customers.

While GM and Harry Brown's discussed details of the proposal and possible revisions to it, Faribault Chrysler received approval from Chrysler for the relocation of its operations. On August 27, 2008 Harry Brown's notified GM that due to Faribault Chrysler's dire financial condition, it would relocate the Chrysler dealership notwithstanding GM's disapproval.

On September 10, GM filed this action, seeking a declaratory judgment that it had properly denied Harry Brown's proposal, specific performance of the dealership contract provision that Harry Brown's not alter the dealership without GM's approval, and preliminary and permanent injunctions. It simultaneously filed a motion for temporary restraining order, preliminary injunction, and expedited hearing.

Harry Brown's agreed to postpone the dualing plan until September 30 to allow for settlement talks. It also submitted an amended proposal that would convert the ABRA building into a separate Chrysler showroom, rather than simply partitioning the existing Harry Brown's showroom. GM rejected the amended proposal because it did not provide for certain features, such as a separate area for GM service orders. In late September the parties negotiated a "standstill agreement" which either could terminate unilaterally.

Citing Faribault Chrysler's deteriorating financial condition, Harry Brown's terminated the agreement on November 20, but agreed to maintain the status quo until the preliminary injunction hearing scheduled for December 8. At that hearing the district court denied GM's motion for a temporary restraining order. It then denied the motion for a preliminary injunction on December 16, and on the next day GM filed its notice of appeal and an unsuccessful motion for an injunction pending appeal. Faribault Chrysler began its relocation to the Harry Brown's facility as originally proposed to GM. The move was completed on December 20, 2008.

In denying the preliminary injunction, the district court found that although GM was likely to prevail on its contract claim, it had not demonstrated that it would be irreparably harmed by the dualing arrangement during the time leading up to trial and that the countervailing harms weighed against a preliminary injunction. On its appeal from that order GM emphasizes its problems in the current economic downturn and contends that it cannot compete against other automakers unless it can offer

-4-

consumers exclusive retail environments. It argues that the district court erred by not finding that dualing would cause it irreparable harm and by considering the harm that an injunction would cause Faribault Chrysler. In addition, GM argues that the district court abused its discretion in balancing these harms.

Harry Brown's contends that the financial difficulties it confronts are more urgent than those of GM and argues that the district court did not abuse its discretion by finding that Harry Brown's potential injuries outweighed those of GM, which were not established with sufficient evidence.

II.

The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The district court should consider: (1) the threat of irreparable harm to the moving party; (2) the weight of this harm as compared to any injury an injunction would inflict on other interested parties; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). We review the district court's factual findings for clear error, its legal conclusions de novo, and its exercise of equitable judgment for abuse of discretion. Heartland Acad. Cmty. Church v. Waddle, 335 F.3d 684, 689–90 (8th Cir. 2003). An abuse of discretion occurs where the district court fails to consider an important factor, gives significant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors. See Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994).

Under Dataphase, the district court is to consider the likelihood that the party seeking a preliminary injunction will ultimately prevail on the merits. GM's primary claim in this action is a request for a declaratory judgment that it reasonably denied Harry Brown's request to dual with Faribault Chrysler. GM also seeks a declaratory judgment that a Minnesota law protecting the right of dealers in new motor vehicles to acquire or invest in diverse lines of motor vehicles, Minn. Stat. § 80E.12(h) (2008), does not prevent it from enforcing its exclusive dealing policy against Harry Brown's. Finally, GM seeks a declaratory judgment that it may terminate Harry Brown's dealership agreement for material breach. GM claims that its exclusive dealing policy is justified for business reasons, not prohibited by state law, and was properly invoked in the case of Harry Brown's.

Harry Brown's argued that GM was not likely to prevail on the merits because the dealership agreement permits GM to deny approval for changes at a dealership based only on dealership network planning considerations. Harry Brown's claimed that dualing has no impact on network planning and argued that GM's denial of its proposal violated the contract's implied covenant of good faith and fair dealing. It also disputed the reasons given by GM for denying approval, such as its assertion that Harry Brown's facilities would no longer satisfy GM guidelines. It contended that GM could not obtain specific performance because such relief is disfavored by Minnesota state policy which supports dealers' rights to carry more than one vehicle line. See Minn. Stat. § 80E.07(1)(c) (prohibiting termination of a dealership agreement solely for a dealer's carrying additional lines); id. § 80E.12(h) (prohibiting manufacturers from requiring dealers to refrain from acquisition of additional vehicle lines).

Both parties submitted affidavits from individuals with direct knowledge of Harry Brown's dualing plan and from experts in marketing, consumer behavior, and intellectual property. Some of the affidavits addressed the merits of GM's claims,

while others were directed at the harms each party might suffer if a preliminary injunction were imposed. James Puff, a GM manager, explained that GM had denied Harry Brown's dualing proposal because it was inconsistent with GM's exclusive dealing strategy, would reduce the square footage available for customer service operations, and further decrease Harry Brown's already low customer satisfaction and sales ratings. A marketing expert named Dr. John Nevin stated that GM's exclusive dealing policy was sound from a business perspective and that its decision to deny Harry Brown's change request was justified. GM manager Allen Tamar stated that its brand image and trademarks would be irreparably damaged by dualing. He also declared that "[i]t has been GM's experience that when a GM dealer commingles other competitive brands in the same facility . . . the result is diminished sales and service performance for GM," but he did not provide any empirical or factual basis for these conclusions.

GM also produced an empirical study to show that dualing would cause it to lose customers. That study, by Sharif Farhat, identified two GM dealerships which had added Chrysler vehicles to their showrooms and commingled the sales personnel. He reported that sales effectiveness, which is a ratio of the dealer's GM sales to total expected GM sales in that territory, declined by an average of 9% at these dealerships. Farhat concluded that Harry Brown's GM sales would decline as a result of dualing even though it planned to maintain separate sales staffs for GM and Chrysler products.

GM also submitted the affidavit of James Berger, a marketing expert, who discussed consumer behavior models and the possibility that selling Chrysler and GM cars at the same dealership might cause a "bait and switch type situation." By that he meant a situation where a customer would be drawn to the dealership by GM's goodwill or marketing but would end up purchasing a Chrysler. Berger predicted that dualing would allow Chrysler to "free ride" on GM's marketing efforts and would damage its goodwill and longstanding customer relationships. Richard Bero, an accountant with expertise in trademark infringement, opined that consumers would

be confused about the affiliation between Chrysler and GM and that GM's trademarks would be diluted by being displayed near allegedly lower quality Chrysler vehicles.

Harry Brown's experts in turn opined that dualing would not harm GM. Dr. Akshay Rao, a marketing professor, stated that rather than GM's reputation being harmed by the proximity of Chrysler cars, GM stood to benefit from "context effects" because the consumer would readily perceive the quality of its own automobiles relative to Chrysler's. Dr. Rao also stated that consolidating showrooms would reduce consumer search costs and thereby enhance consumer goodwill for GM. He questioned GM's assumption that greater damage would be done to its reputation and sales by having a competitor in the same facility as opposed to only 600 feet away. Berger's suggestion that dualing might lead to a "bait and switch" was disputed by Dr. Rao on the ground that automobile consumers are highly involved in their purchasing decisions and likely to do extensive research on competing brands. A consumer who has rejected the Chrysler brand based on preliminary research and decided to visit a GM showroom, is in Rao's opinion, unlikely to reconsider upon seeing a Chrysler car there.

An automotive marketing and communications executive named Eric Anderson cited studies showing that 85% of Twin Cities area automotive consumers search online before visiting a dealership. As a consequence, the average number of dealership visits before a purchase has declined by over two thirds since 2000. Anderson and Rao agreed that a showroom environment has become less important now that so many consumers establish their initial preferences through online research before ever visiting a dealership.

Harry Brown's also introduced evidence that GM permits dualing at thirty other GM dealerships in Minnesota. It argued that the ubiquity of dualing dealerships belies GM's claim that dualing is detrimental to its business. GM did not present any

evidence that dualing at these other dealerships has been harmful to it. In addition Harry Brown's pointed out that its GM sales performance exceeded GM expectations from 1992 to 2001, the very years when it had also carried the Dodge line at its facility.[3]

### III.

The district court found that GM's decision to deny Harry Brown's proposal was likely a proper exercise of business judgment in light of present economic and business conditions, and that GM was likely to succeed in obtaining a declaratory judgment that it reasonably denied Harry Brown's dualing proposal. The district court did not analyze whether GM was likely to prevail on its other claims. Nor did it discuss the likelihood of GM's obtaining specific performance of the contract provision in question. Consistent with its argument that money damages would not fully compensate it for its losses, GM seeks only equitable relief. Whether specific performance would be available to GM should it prevail at trial is not yet determined. We note, however, that Minnesota law does not foreclose the remedy of specific performance to enforce exclusivity provisions. See Metro Motors v. Nissan Motor Corp., 339 F.3d 746, 749 (8th Cir. 2003).

Regardless of the strength of its claim on the merits, a movant for a preliminary injunction should show a threat of irreparable harm. See Dataphase, 640 F.2d at 113

---

[3]While GM's appeal was pending, Harry Brown's submitted evidence purporting to show its high number of sales of GM automobiles during January and February 2009. We grant GM's motion to strike this evidence because it was not before the district court and because GM has not yet had an opportunity to test the reliability of these sales data. Evidence about Harry Brown's GM sales since it began dual operation will no doubt be examined at trial along with other information produced by the parties.

("The likelihood that plaintiff ultimately will prevail is meaningless in isolation . . . [and] must be examined in the context of the relative injuries to the parties and the public."); Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996) ("[A] party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."). Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.

GM contends that dualing would damage its goodwill, reputation, and customer relationships, deprive it of control over its trademarks, and result in fewer dealership resources devoted to selling and servicing GM products. See Iowa Utils. Bd., 109 F.3d at 426 (loss of consumer goodwill can be irreparable harm); Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003) (loss of intangible assets such as reputation and goodwill constitute irreparable injury even though they are difficult to quantify).

Harry Brown's counters that GM will not suffer these injuries because the dealership will retain a separate GM sales staff and because the square footage dedicated to GM sales and service would still satisfy GM facility requirements if Chrysler operations were added. Harry Brown's also argues that placing Chrysler cars in the same showroom will not divert GM sales because customers are already well informed about the options in the automobile market.

The district court found that GM's claim of lost customer relationships was equivalent to a claim of lost profits. It noted that the Farhat study showed that any decrease in sales caused by dualing was quantifiable and could therefore be compensated. Consequently the projected impact did not rise to the level of irreparable harm. GM argues that the district court erred by not considering the difficulty of proving lost profits. See Iowa Utils. Bd., 109 F.3d at 426 (economic loss

is not irreparable harm so long as losses are recoverable). GM did not raise this concern below, however, and we conclude that the district court did not clearly err by finding that any lost sales would amount to a compensable injury.

As to GM's claims of intangible injuries such as damaged goodwill, reputation, and trademarks, the district court was faced with conflicting opinions about the likely response of consumers to a dual showroom. The burden was on GM to establish the threat of irreparable injury, but the district court found that the GM affidavits stated only general business principles and were too speculative to establish such injury.

The district court found that GM's experts had "fail[ed] to sufficiently establish that any of the already dualing Minnesota GM dealerships have irreparably harmed GM." According to GM these other dualing dealerships are not comparable to Harry Brown's because they either have separate facilities for the non GM cars or are older dealerships operating under previous policies. The district court found, however, that the record did not show "an appreciable distinction between the dealerships that dual in a single facility as opposed to those that dual in multiple facilities at the same location." It further found that GM had not addressed why dualing in a single facility would irreparably harm GM, while dualing in closely adjacent facilities would not.

GM argues that we have previously affirmed preliminary injunctions where the movant advanced nothing more to support its claim of intangible harm than arguments from general business principles. See, e.g., Med. Shoppe Int'l, Inc., 336 F.3d at 805; United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 741 (8th Cir. 2002). This argument overlooks the standard for our review, however. That standard makes it acceptable for a district court to find a likelihood of irreparable harm based on general principles, but it does not mean that it is error for the district court to require additional evidence in other cases. Part of the district court's discretion is assessing whether an alleged harm requires more substantial proof.

-11-

We cannot say that the district court's findings were unsupported by the evidence before it, and "[a] district court's choice between two permissible views of evidence cannot be clearly erroneous." Tadlock v. Powell, 291 F.3d 541, 546 (8th Cir. 2002). Until 2001, a single dealership referred to as Harry Brown's sold both GM and Chrysler lines at the current Harry Brown's location. Harry Brown's presented evidence that members of the Faribault community still call both dealerships Harry Brown's and that 25% of the families in the two dealerships' customer databases own both GM and Chrysler vehicles. The two dealerships had been located within 600 feet of each other so consumers have to some extent always been confronted with competing linemakes when they visited either Harry Brown's or Faribault Chrysler. The longtime association of the two dealerships in customers' minds, their proximity, and overlapping customer bases lessen the harm that can be expected from dualing.

GM argues that the district court decision "will open a Pandora's box," induce other dealerships to dual without GM's permission, and enable them to avoid preliminary injunctions by claiming economic hardship. As an example, GM states that it had to seek injunctive relief to prevent a different Minnesota GM dealership from adding Hyundai automobiles. That dealership announced its intention to dual in November 2008 before the district court decision in this case, and that single example does not establish a Pandora's box syndrome. Likewise, GM's assertion that the district court's ruling permanently deprives it of all control over its trademarks exaggerates what is at issue here—that is whether the district court erred or abused its discretion in denying a preliminary injunction while the parties prepare for trial. Whether an injunction is imposed during that period would have no effect on GM's ultimate ability to prevent Harry Brown's from commingling GM and Chrysler products and trademarks should it prevail at trial.

Although failure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction, Watkins, 346 F.3d at 844, the district court also found that the balance of harms and the public interest weighed against preliminary injunctive

relief. Under Dataphase the district court should consider "the injury that granting the injunction will inflict on other parties litigant." 640 F.2d at 113. The district court found that Harry Brown's would be harmed by an injunction because it would lose a significant part of its family business, citing the affidavit of Steven Brown. In that affidavit Brown discussed the risk that Faribault Chrysler would close if it could not share facilities with the GM dealership, resulting in the loss of nineteen jobs in the Faribault community. Harry Brown's contended that dualing was necessary for the businesses conducted under the holding company umbrella to break even and that it would provide Harry Brown's with needed cost savings and efficiencies. We conclude it was not clearly erroneous for the district court to find that Harry Brown's would be harmed by the demise of its sister entity, Faribault Chrysler.

GM contends that the district court should have considered other means by which Faribault Chrysler could remain solvent. GM submitted an affidavit from an accounting expert that Faribault Chrysler could reduce costs at its existing location by restructuring. Harry Brown's countered with affidavits from Michael and Steven Brown about Faribault Chrysler's finances, explaining their conclusions that no cost saving measures other than dualing would be adequate. It was not error for the district court to credit these first hand perspectives over the opinion of an expert with no direct knowledge of Faribault Chrysler's circumstances.

GM argues that harm to its competitor Chrysler should not impair its right to enforce its contract with Harry Brown's, but the district court's order does not prevent GM from enforcing its dealership contract if it prevails at trial. Although GM argues that Harry Brown's cannot be hurt by an injunction requiring compliance with its contract, Harry Brown's denies that it has not fulfilled its contractual obligations.

The district court found that the public interest in maintaining nineteen jobs in the Faribault community weighed against an injunction. We agree. The public also

has an interest in maintaining consumer choice and convenience in the automobile market. Cf. Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 505 (8th Cir. 1987) (public interest in price competition). Moreover, Minnesota state law expresses a policy preference for competition among automotive dealers by restricting a manufacturer's ability to penalize dealers for investing in competing lines of motor vehicles. See Minn. Stat. §§ 80E.07(1)(c), 80E.12(h). The district court did not clearly err in finding that the public interest weighs against a preliminary injunction.

The district court found that the harm to Harry Brown's and the public interest outweighed any irreparable harm that GM might suffer in the interim before trial. We conclude that the district court did not err in its findings or abuse its discretion in applying the Dataphase factors and making its equitable judgment. We therefore affirm the district court's order denying a preliminary injunction.

The district court also denied GM's motion for an injunction pending appeal and GM renewed that motion in this court, arguing that a preliminary injunction is imperative considering its precarious financial condition. We took GM's motion under consideration together with the appeal from the district court. Having now decided that appeal, we deny the motion for an injunction pending appeal. See Nader 2000 Primary Comm., Inc. v. Hazeltine, 226 F.3d 979, 980 (8th Cir. 2000). GM did not create a record below showing that denial of an injunction would materially affect its finances, whereas Harry Brown's presented evidence that it would suffer immediate financial harm and the town of Faribault would lose nineteen jobs if the injunction were imposed. We do observe from public sources that GM's financial circumstances apparently have deteriorated since the district court issued its order. Under all the circumstances it is essential for the district court to schedule an early trial on the merits to contain any interim harm.

-14-

Harry Brown's has moved for an award of attorney fees and costs under Rule 38, arguing that GM's appeal and motion for an injunction pending appeal are frivolous. GM's arguments in support of its appeal and its motion certainly were not "wholly without merit," see Misischia v. St. John's Mercy Health Sys., 457 F.3d 800, 806 (8th Cir. 2006), and we deny Harry Brown's motion for fees and costs.

IV.

Accordingly, we affirm the order of the district court denying a preliminary injunction and remand the case to the district court with instructions for an early trial on the merits.

_____