# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 11-6065

———

| | | |
|---|---|---|
| In re: AFY, Inc., also known as Ainsworth Feed Yards Company, Inc. | * * * * | |
| Debtor | * * | |
| Joseph H. Badami | * * | |
| Plaintiff—Appellee | * * | Appeal from the United States Bankruptcy Court for the District of Nebraska |
| v. | * * | |
| Robert A. Sears | * * | |
| Defendant—Appellant | * * | |
| RiverSource Life Insurance Policy | * * | |
| Defendant—Appellee | * | |

———

Submitted: November 30, 2011
Filed: January 13, 2012

———

Before KRESSEL, Chief Judge, SCHERMER and VENTERS, Bankruptcy Judges

———

KRESSEL, Chief Judge

Robert A. Sears appeals from the September 6, 2011 bankruptcy court order finding that the bankruptcy estate of AFY, Inc., a/k/a Ainsworth Feed Yards Company, Inc., is contractually and equitably entitled to receive the cash value of a

life insurance policy, owned by Sears and paid for by AFY, to reimburse AFY for policy premiums paid. On appeal Sears argues that the bankruptcy court lacked jurisdiction, that his agreement with AFY was an executory contract, which was rejected, resulting in an abandonment of the policy which reverted to Sears's estate, and that the bankruptcy court erred in concluding the AFY estate has an equitable interest in the insurance policy. We reverse.

## BACKGROUND

Prior to Sears's and AFY's bankruptcies, Sears served as AFY's president. On September 27, 1996, Sears and AFY entered into a split dollar agreement defining their contractual relationship in a life insurance policy naming Sears as the insured. The agreement calls for a policy owned by Sears with a face value of $350,000 and provides Sears the ability to select the beneficiary. The agreement specifically states, "it is the express intention of the parties that this Agreement be construed so that the CORPORATION has absolutely no right of ownership in the policy." AFY was required to pay all of the premiums. At all relevant times, the beneficiary of the policy has been Sears's wife, Diana Sears.

The agreement provides that upon issuance of the policy Sears *shall* collaterally assign the policy to AFY. Further, the agreement requires Sears to sign demand notes in favor of AFY in the amount of the premium payments paid by AFY.

In the event of Sears's death, the agreement requires repayment to AFY of all amounts paid in premiums, with the remainder of the death benefit paid to the designated beneficiary. All forms necessary to ensure that AFY is repaid first are to be filed "upon Sears's death."[1]

The agreement provides three different ways it can be terminated: 1) if Sears ends his employment with AFY, 2) if either party provides written notice to the

---

[1] It is unclear who would file these forms.

other and 3) if AFY attempts to impair or defeat Sears's interest in the policy. In the event the agreement is terminated, Sears has 30 days to repay AFY all premium amounts in exchange for a complete release of the collateral assignment and all indebtedness. Failure to repay the premiums within the 30-day period coupled with a request by AFY to transfer ownership requires Sears to transfer ownership of the insurance policy to AFY. Sears signed the agreement in his capacity as an employee of AFY and as the president of AFY.

The life insurance policy was issued by the IDS Life Insurance Company[2] and was received by Sears on the same day the split dollar agreement was signed: September 27, 1996. Sears did not collaterally assign the policy or sign any demand notes in favor of AFY.

Between 1996 and 2009, AFY made 15 premium payments. The first payment accompanying the policy application in 1996 was $10,000. In each subsequent year, payments totaling $12,500 were made annually.

After the 2009 payment, the insurance company sent a letter to Sears indicating that the payment combined with the total premiums paid to date exceeded the Internal Revenue Code §7702[3] limits, necessitating a refund of $3,916.27. The letter further illustrated the annual premiums going forward would be adjusted down to $11,546.05. The refund check of $3,916.27 issued on September 28, 2009 was made out to Sears and was cashed on September 29, 2009.

In total, AFY paid $172,500 in premiums over 14 years, of which $3,916.27 was refunded to Sears. AFY's last payment was on September 17, 2009.

---

[2] The name of the insurance company has changed several times since the policy was initially issued. Currently, the name of the issuing company is Defendant RiverSource Life Insurance Company.

[3] Understanding Internal Revenue Code §7702 is not necessary for the purposes of this opinion.

Sears filed a chapter 11 petition on February 2, 2010. Sears is the debtor-in-possession in his case. In Sears's Schedule B, the Ameriprise[4] Life policy, valued at $136,669,[5] is listed as one of his personal property assets. In Schedule C, Sears elected to choose his exemptions under 11 U.S.C. § 522(b)(3) allowing him to claim exemptions according to Nebraska state law. Under Neb. Rev. Stat. §44-371 Sears claimed an exemption of "$10,000 or other maximum"[6] with a total value listed on Schedule C of $136,669.

AFY filed a chapter 11 petition on March 25, 2010. Similar to Sears's petition, AFY's Schedule B lists the Ameriprise life insurance policy as an asset valued at $136,669. Sears signed AFY's chapter 11 petition as the president of AFY. Neither AFY nor Sears lists the split dollar agreement as an executory contract in Schedule G, or any schedule for that matter.

On May 6, 2010, Joseph H. Badami was appointed as the chapter 11 trustee in AFY's case. He filed an adversary complaint against Sears and the insurance company on June 14, 2010, asserting an ownership interest in the insurance policy and requesting to recover the cash value of the policy. An amended complaint was filed on July 27, 2010, correctly naming the insurance company, claiming an equitable interest in the policy, requesting the court to void Sears's interest in the policy, and asking for payment of the value of the policy from RiverSource. AFY's case was converted to chapter 7 on September 2, 2010. Badami was appointed the chapter 7 trustee.

---

[4] The policy at issue now held by defendant RiverSource.

[5] The parties stipulated that the value of the insurance policy is between $100,000 and $120,000. Sometime between September 11 and September 28, 2011, the value of the insurance policy was converted from an equity investment to a fixed cash amount to be held by RiverSource until the outcome of this appeal.

[6] Neb. Rev. Stat. §44-371 provides a $100,000 exemption for "all proceeds, cash values, and benefits accruing under any annuity contract, under any policy or certificate of life insurance payable upon the death of the insured to a beneficiary."

After a trial, the bankruptcy court ruled that AFY's bankruptcy estate is contractually and equitably entitled to receive the cash value of the life insurance policy to reimburse AFY for amounts paid for premiums. For the reasons that follow, we reverse.

## JURISDICTION

We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. §158(b).

## STANDARD OF REVIEW

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Moon v. Anderson (In re Hixon),* 317 B.R. 771, 773 (B.A.P. 8th Cir. 2004) (citing Fed. R. Bankr. P. 8013). A finding of fact will only be reversed if the evidence leaves the reviewing court with a definite and firm conviction that a clear error was committed. *Id.* (citing *Wintz v. American Freightways, Inc. (In re Wintz Cos.)*, 230 B.R. 840, 844 (B.A.P. 8th Cir. 1999). A grant of an equitable remedy is reviewed for an abuse of discretion. *General Motors Corp. v. Harry Browns's LLC,* 563 F.3d 312, 316 (8th Cir. 2009). An abuse of discretion occurs when the bankruptcy court failed to consider an important factor, gives weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors. *Id.*

## DISCUSSION

The bankruptcy court found the split dollar agreement provided that Sears would repay the entire amount of all premiums paid by AFY and if he did not repay the amounts he would execute any documents required to transfer the policy to AFY. Building upon these findings, the bankruptcy court ruled that AFY is contractually and equitably entitled to receive the cash value of the policy.

### 1. The bankruptcy court possesses the jurisdiction and constitutional authority to enter final judgment.

Shortly before trial, Sears filed a motion to dismiss the plaintiff's complaint. Because it is short, we quote the motion in its entirety:

> Comes now Defendant Robert A. Sears and moves this Court to dismiss this adversary proceeding at Plaintiff's costs for lack of subject matter jurisdiction. *Stern v. Marshall*, 2011 WL 2472792, ___ U.S. ____ (decided June 23, 2011).

Badami objected to the motion, pointing out that the bankruptcy court clearly had jurisdiction and nothing in *Stern v. Marshall* holds or even suggests otherwise. Badami construed the motion to raise the issue of whether or not the adversary proceeding was a core proceeding and as a challenge to the bankruptcy judge's authority to enter a final order determining the proceeding. The bankruptcy court similarly construed the motion and held that the adversary proceeding was a core proceeding and that it was constitutional for it to hear and determine it.

On appeal, Sears, almost as if he did not read Badami's response or the court's order, renews his argument that the bankruptcy court lacks subject matter jurisdiction based on *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

Sears's argument represents a basic misunderstanding of both bankruptcy jurisdiction and the Supreme Court's opinion in *Stern v. Marshall*. In 28 U.S.C. § 1334, Congress has vested the district courts with jurisdiction over bankruptcy cases, civil proceedings arising under the Bankruptcy Code or arising in or related to bankruptcy cases. Sears raises no question regarding whether this adversary proceeding falls within that jurisdictional grant nor does he make any constitutional challenge to that grant.

While the bankruptcy court typically functions as a separate court, for jurisdictional purposes, it is not a court apart from the district court. The term "bankruptcy court" is the title Congress has bestowed on the bankruptcy judges in a particular district. 28 U.S.C. § 151. Bankruptcy judges are judicial officers of the district court and "may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding . . . ." *Id*. It is the scope of the authority granted by Congress to bankruptcy judges that was the issue in *Stern v. Marshall*.

Congress has allowed district courts to refer bankruptcy cases and proceedings to the bankruptcy judges in its district. 28 U.S.C. § 157(a). The United States District Court for the District of Nebraska has made such a reference. Thus, whatever jurisdiction Congress vested in the district court, has now been referred to the bankruptcy court. However, Congress, aware of constitutional limitations, has limited the bankruptcy court's authority over these referred cases and proceedings. Congress has granted the bankruptcy court the authority to hear *and determine* all bankruptcy cases and all core proceedings arising under the Bankruptcy Code or arising in a bankruptcy case. *Id*. § 157(b)(1). If a proceeding is not a core proceeding, the bankruptcy judge may still hear the proceeding, but may not *determine it*. In the latter situation the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. *Id.* § 157(c)(1). Lastly, a bankruptcy judge may hear and determine a non-core proceeding with the consent of the parties. *Id.* § 157(c)(2).

Thus, the first question in determining a bankruptcy judge's authority to enter a final order is to see if Congress has granted the court the statutory authority

to do so by designating it a core proceeding. This case constitutes a core proceeding under several sections of § 157. The proceeding is a dispute between the representatives of two bankruptcy estates – Badami is the trustee appointed in the case of AFY, Inc. and Robert A. Sears is the debtor-in-possession in his chapter 11 case with all of the rights and duties of a trustee. *See* 11 U.S.C. § 1107(a). Congress has created a non-exhaustive list of core proceedings and this proceeding falls within a number of the iterated examples. It is a matter concerning the administration of the estate—two estates, in fact. 28 U.S.C. § 157(b)(2)(A). It deals with the allowance or disallowance of claims against the estate or exemption from property of the estate. *Id.* § 157(b)(2)(B). It is a request for an order to turn over property of the estate. *Id.* § 157(b)(2)(E). It is the determination of the validity, extent, and priority of liens. *Id.* § 157(b)(2)(K). It can fairly be characterized as a proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, of the parties. *Id.* § 157(b)(2)(O).

So the real question raised, although not correctly posed by Sears, is whether or not Congress' grant of authority to bankruptcy judges under any or all these core subdivisions is unconstitutional as violative of Article III. This is the question addressed by the Supreme Court in *Stern v. Marshall*.

In *Stern v. Marshall*, the Supreme Court found that although 28 U.S.C. § 157(b)(2)(C) designated as a core proceeding "counterclaims by the estate against persons filing claims against the estate," it was unconstitutional for a bankruptcy judge to determine such counterclaims, at least to the extent that the counterclaim arose under state or other nonbankruptcy law. That section is not implicated here. While there has been an enormous amount of discussion regarding the implications of *Stern v. Marshall,* the Supreme Court itself has cautioned that its holding is a narrow one,[7] affecting only this one small part of the bankruptcy judges' authority.

---

[7] "We agree with the United States that the question presented here is a 'narrow one.'" 131 S. Ct. at 2620.

Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional. In this regard, we agree with the bankruptcy court.

As a result, we reject Sears's argument that the bankruptcy court lacked jurisdiction and that we should require dismissal of this adversary proceeding based on a lack of jurisdiction. We similarly reject the more properly cast argument that this is not a core proceeding or that it would be unconstitutional for the bankruptcy judge to determine it.

## 2. AFY is not contractually or equitably entitled to the cash value of the policy.

While the split dollar agreement provides AFY with the contractual right to receive a security interest in the insurance policy and demand notes for premiums paid, no such interest or notes were given by Sears. As a result, Sears is in default.

The agreement also provides that upon Sears's failure to repay the premiums within 30 days of termination of the agreement, AFY has the right to request ownership of the policy. However, there simply is no language in the agreement indicating AFY has any interest—ownership, secured, or otherwise—in the policy itself. The legal remedy available to Badami is an unsecured claim in Sears's bankruptcy estate.

### a. The split dollar agreement was an executory contract.

An executory contract is one in "which the obligations of both the bankrupt and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach." *Cameron v. Pfaff*, 966 F.2d 414, 416 (8th Cir. 1992) (quoting *Jenson v. Continental Fin. Corp.*, 591 F.2d 477, 481 (8th Cir. 1979). "[T]he term executory contract 'generally includes

9

contracts on which performance remains due to some extent on both sides.'" *Id.* (quoting S.Rep. No. 95-989, at 55 (1978), *reprinted in* 1978 U.S.C.CA.N. 5787, 5844). A claim resulting from the rejection of an executory contract is allowed as if it had arisen before the petition filing date. 11 U.S.C. §502(g)(1).

Under the agreement, Sears's performance of assigning the policy as collateral to AFY and signing demand notes in the amounts of the premium payments was still due on March 25, 2010 when AFY filed chapter 11. Concurrently, AFY's performance of paying the 2010 premium, and all remaining premiums, historically paid in September, was also still due. The agreement was an executory contract which could be assumed or rejected at any time before confirmation of a plan. Because both parties to the contract were in bankruptcy the contract was executory as to both. Both Badami and Sears had until confirmation of their respective chapter 11 plans to assume or reject the contract. *Id*. §365(d)(2).

Sears argues the contract was still executory when AFY's case converted to chapter 7 on September 2, 2010 requiring Badami to assume or reject it on or before November 1, 2010, 60 days after conversion. *Id.* §365(d)(1). This is incorrect. The split dollar agreement terminated before AFY's case was converted to chapter 7 and was no longer executory. Badami terminated the agreement according to its terms.

### b. The split dollar agreement terminated on July 27, 2010.

The split dollar agreement is clear and unambiguous. Sears is the owner of the insurance policy and AFY must pay the premiums. When the agreement is terminated, Sears has the right to repay the premiums to be released from the collateral assignment and indebtedness. If Sears does not repay the Premiums, AFY can request that Sears transfer ownership to AFY and Sears must then transfer ownership.

The agreement provides three ways it can be terminated: 1) Sears tenders his resignation, 2) written notice of intent to end the agreement provided by either

party to the other, and 3) any attempt by AFY to impair or defeat Sears's interest in the policy.

The bankruptcy court found Sears's employment with AFY ended "long ago." This finding is not clearly erroneous. Also, on July 27, 2010 in his amended complaint Badami asked the bankruptcy court to void Sears's interest in the life insurance policy. The complaint served as written notice of intent to end the agreement and was certainly an attempt to impair or defeat Sears's interest in the policy. Thirty days after termination, August 26, 2010, when Sears did not repay the $172,500, AFY had the contractual right to request Sears to transfer ownership of the policy to AFY. Additionally, once the agreement was terminated, it was no longer executory or subject to the provisions of § 365.

However, even if the agreement had been executory and rejected, Sears's argument that rejection of the contract results in an abandonment of the policy by AFY which then reverts to Sears is unfounded. Rejection of the agreement constitutes a breach. *Newman Grill Systems, LLC v. Ducane Gas Grills, Inc. (In re Ducane Gas Grills, Inc.)*, 320 B.R. 324, 337 (Bankr. D.S.C., 2004) (holding the decision to reject is correctly viewed as a "power to breach the executory contract or lease.").

### c. Badami is not contractually entitled to the cash value of the policy.

Regardless of whether or not the executory contract was terminated by Badami or rejected 60 days after conversion, Sears did not fully perform his duties under the agreement.

We agree Badami has a right to be reimbursed for the premiums AFY paid. This gives AFY's estate a claim. If the contract were still in force and Sears were not in bankruptcy, Badami could seek either specific performance granting an interest in the policy—either a security interest or ownership—or damages for failing to do so. But Sears is in bankruptcy. Under the Bankruptcy Code, an

11

unperformed contract, executory or otherwise, provides a creditor similar remedies in the form of claims. *See* 11 U.S.C. 502(g)(1). Section 101 of the Code defines a claim as:

> (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. §101(5).

Badami has a claim for damages for failure to provide the interest in the policy called for in the agreement (right to payment) or a claim for an interest in the policy (right to an equitable remedy for breach of performance). Either way, Badami has a claim in Sears's bankruptcy case.

### d. Badami is not equitably entitled to the cash value of the policy.

The bankruptcy court cites no authority for its decision that Badami has the right to the insurance policy itself. Nor does Badami point us to any convincing authority.

A court has discretion to provide an equitable remedy. *American Federation of Labor v. Watson*, 327 U.S. 582, 593 (1946). While equity is flexible, it is confined within the boundaries of "traditional equitable relief." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "Equity is generally unavailable in breach of contract cases." *U.S. Bank Nat'l Ass'n v. United Airlines, Inc. (In re United Airlines, Inc.)*, 438 F.3d 720, 732 (7th Cir. 2006). Money damages or the collection of a debt does not invoke equitable jurisdiction.

*Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.* 14 F.3d 1507, 1518 (11th Cir. 1994).

If Sears was not in bankruptcy, Badami could have sought to enforce the agreement to require Sears to grant AFY a security interest in the policy or he could have sought money damages. He has those same rights now except they are in the form of a claim in Sears's bankruptcy case.

## Conclusion

For the reasons stated above, the decision of the bankruptcy court is reversed.

_____