# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3152
_____

Denali Summit, LLC,

*Plaintiff - Appellant,*

v.

Union Electric Company, doing business as Ameren Missouri,

*Defendant - Appellee.*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: September 18, 2025
Filed: October 27, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and STRAS, Circuit Judges.
_____

COLLOTON, Chief Judge.

This appeal arises from a dispute between Denali Summit, LLC and Ameren Missouri regarding the scope of Ameren's easement over Denali Summit's property. Ameren is licensed by the Federal Energy Regulatory Commission to operate the Osage Project, a hydroelectric plant on the Lake of the Ozarks. Denali Summit owns lakefront property within the project boundary, and Ameren holds an easement over

the property. Ameren's license requires it to enforce a shoreline management plan, but the parties agree that Ameren cannot enforce its regulatory authority without the requisite property rights.

The dispute here concerns whether Denali Summit may install certain docks, seawalls, erosion-control measures, and a breakwater on the lake without violating Ameren's rights. The district court first denied Ameren's request for a preliminary injunction but then reconsidered and granted preliminary relief. The court enjoined Denali Summit from further construction activities and from using its existing structures for commercial purposes. We conclude that Ameren has not shown likely irreparable harm arising from Denali Summit's activities that would justify injunctive relief before the case is resolved on the merits. We therefore vacate the district court's order.

I.

In 1926, the FERC issued a license to Walter Cravens to construct a dam across Missouri's Osage River and to generate hydroelectric power from the resulting reservoir. Ameren acquired rights to the Osage Project in 1929, while the dam remained under construction. As part of the project, Ameren obtained a flooding easement from property owners named Hart so that the company could flood the Harts' land when the dam was completed. In 1931, Ameren closed the dam and flooded the area now known as the Lake of the Ozarks.

Ameren operated the Osage Project for 50 years under its initial license. The FERC reissued Ameren's license in 1981 and 2007. In its order issuing Ameren's 2007 license, the FERC required Ameren to file a shoreline management plan, and the current plan was adopted in 2017. The plan requires all parties to obtain a permit before constructing any structure along the shoreline. Ameren issues permits for

structures that conform to the plan and regularly inspects the shoreline to monitor compliance.

In 2022, Denali Summit purchased the property formerly owned by the Harts, subject to Ameren's 1930 easement. Denali Summit applied to Ameren for permits to construct docks, but Ameren denied the applications because the proposed docks exceeded the maximum length allowed under the shoreline management plan. Denali Summit proceeded to install noncompliant docks, seawalls, and erosion-control measures, as well as a noncompliant breakwater.

When Ameren demanded that Denali Summit remove the structures and comply with the plan, Denali Summit sued Ameren in state court. The action sought a declaratory judgment that Ameren's conduct infringed on Denali Summit's property rights and an order quieting title. Ameren removed the suit to federal court, and brought counterclaims to quiet title and to enjoin Denali Summit from allegedly violating the FERC order that issued Ameren's license. *See* 16 U.S.C. § 825p. Ameren also sought a preliminary injunction requiring Denali Summit to halt new construction and either to remove the existing structures or to demonstrate their compliance with the plan. The district court denied the motion on the ground that the FERC license did not affect Denali Summit's rights in the land.

Ameren then renewed its motion for a preliminary injunction with additional briefing and documents. This time, the district court granted the motion in part. The court concluded that Ameren had shown a likelihood of success on its quiet-title claim because the FERC license gave Ameren the right to control structures within the project boundary, and the easement did not "negate[]" Ameren's authority under the license. The court also determined that Denali Summit's actions caused irreparable harm to Ameren, and that an injunction was warranted after considering the relevant factors. *See Dataphase Sys., Inc. v. C. L. Sys., Inc.*, 640 F.2d 109, 113

-3-

(8th Cir. 1981) (en banc). The court enjoined Denali Summit from working on existing structures, constructing new structures, leasing boat slips, and using existing structures for commercial purposes.

Denali Summit appeals, and we review the court's legal conclusions *de novo*, its factual findings for clear error, and its ultimate determination for abuse of discretion. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342-43 (8th Cir. 2024).

## II.

A plaintiff seeking a preliminary injunction must show, among other things, that it is likely to suffer irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir.1996). Even where a permanent injunction may be appropriate relief after a final decision on the merits, preliminary injunctive relief is not necessarily warranted if any interim harm can be remedied in a final judgment. *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (per curiam). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

The district court ruled that Ameren had established irreparable harm because Denali Summit's four boat docks and breakwater extended farther into the lake than allowed by the guidelines under Ameren's shoreline management plan. The court observed that eleven years ago, in 2014, there were 45 fatal or serious water-related

incidents and 43 serious injuries at the Lake of the Ozarks.  The court then concluded that Denali Summit's docks and breakwater are "possible" hazards to public safety and "may" contribute to serious water-related incidents or injuries.

We conclude that the record is insufficient to support a determination of likely irreparable harm that would justify a preliminary injunction.  There is no showing that Denali Summit's four boat docks or breakwater, in particular, pose a significant risk to public safety, and the district court did not so find.  A suggestion of "possible" hazard is not enough to justify injunctive relief for the interim period during which the case is litigated to final judgment. *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015).  Even if Ameren were to experience property damage or tort liability arising from Denali Summit's structures, moreover, the potential injuries could be remedied through an award of damages.

Ameren also suggests that Denali Summit's alleged refusal to comply with Ameren's license is itself an actual and concrete harm.  A district court in 2008 entered a *permanent* injunction forbidding a party to construct docks in violation of Ameren's permitting requirements.  The court reasoned that it was impossible for Ameren to ensure that the builder's use of the lake was consistent with the project approved by the FERC.  *Union Elec. Co. v. Prewitt*, No. 08-4113, 2008 WL 11337345, at *5 (W.D. Mo. Dec. 18, 2008).  The court in *Prewitt* also noted that the builder's violation "may encourage violations by other dock builders, making it even harder for Ameren to fulfill its obligations under the 2007 License." *Id.*  Because damages could not redress this "continuing violation," an injunction was appropriate. *Id.*

Here, Ameren seeks injunctive relief before a final determination on the merits. Ameren therefore must show that it faces harm that a permanent injunction would not prevent.  Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages-Equity-*

*Restitution* § 2.11(2), at 193 & n.748 (3d ed. 2018). If Ameren were to prevail on the merits and if a permanent injunction were appropriate, then Denali Summit's encroachment during the interim period would be redressable with damages. *See Wallace v. Byrne*, 672 S.W.3d 96, 105, 105, 111 (Mo. Ct. App. 2023). Injunctive relief is therefore not justified before the case is resolved on the merits.

The merits in this case are murky. The district court first concluded that the easement granted to Ameren did not limit Denali Summit's right to build structures, and that Ameren's license from the FERC did not limit a property owner's rights in land within the project boundary. The court then reversed course and concluded that Ameren's authority under the FERC license gave it the right to control structures within the project boundary, and that the easement did not "negate[]" Ameren's authority under the license. On appeal, however, Ameren defends the injunction based on its property rights under the easement, not based on regulatory authority under the license. We are thus left with a debate between the parties over the scope of the easement, and a district court ruling that was not based on the easement. Such an undeveloped record on the merits fortifies our conclusion that the record is insufficient to justify equitable relief at this juncture.

For these reasons, the preliminary injunction is vacated, and the case is remanded for further proceedings.

_____