# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2013

Lyle W. Cayce
Clerk

No. 12-20555

In the Matter of:   RICHARD DAVIS,

                            Debtor,

------------------------------------------------------------------------

PHILIPPE TANGUY; 13,500 AIR EXPRESS, L.L.C.; 13,500 AIR EXPRESS, L.P.,

                            Appellants,

v.

WILLIAM WEST, Trustee,

                            Appellee.

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:10-CV-1194

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20555

Appellants, Philippe Tanguy, 13,500 Air Express, L.L.C., and 13,500 Air Express L.P. (collectively, "Tanguy") appeal the district court's judgment in favor of Appellee, Chapter 7 Trustee, William G. West ("the Trustee"), holding Tanguy liable to the Trustee for the remaining balance on an unpaid promissory note, including interest and attorney's fees. For the reasons stated herein, we affirm.

## I.

In January 2006 in Houston, Texas, Tanguy executed a promissory note in the amount of $1,237,500 payable to the debtor, Richard Davis ("Davis"),[1] for the purchase of a DeHavilland Twin Otter N186AL aircraft ("the aircraft") in accordance with a purchase agreement between Tanguy and Davis signed the same day. The note was to be repaid in 124 monthly installments. Tanguy began making monthly payments on the note in January 2007 in accordance with its terms.

Six months later, in June 2007, Davis filed a voluntary Chapter 7 bankruptcy and the Trustee was appointed. The bankruptcy estate, through the Trustee, then became the owner of the note. A few months later, Davis assigned the note to JLE Investors, Inc. ("JLE") as collateral for a loan. Upon learning of Davis's assignment of the note to JLE, the Trustee filed a claim to recover the note. In February 2008, the bankruptcy court approved a settlement wherein the note was re-assigned from JLE to the Trustee. Then in April 2008, Tanguy signed a stipulation indicating that the Trustee was the lawful holder of the note and that the note was in full force and effect. Tanguy continued to make payments on the note ultimately totaling approximately $190,000.

In November 2008, Tanguy stopped making payments on the note, leaving an unpaid principal balance of $1,047,500. A few months later, in January 2009,

---

[1] The note was made payable to FMS Co., which the bankruptcy court found to be an assumed name of Richard Davis.

2

No. 12-20555

Tanguy repudiated all obligations under the note entirely. The Trustee then sent several demand letters to Tanguy with regard to his default on the note. In response, Tanguy's counsel sent a letter to the Trustee notifying him of another lawsuit ("the Laux suit") wherein a temporary injunction was issued prohibiting Tanguy from selling, encumbering, transferring or relocating the aircraft from the county.[2] Tanguy claimed that the Laux suit interfered with his ownership rights to the aircraft and that the Trustee was bound by the terms of the purchase agreement (entered into by Tanguy and Davis in 2006) to defend Tanguy's title to the aircraft, presumably pursuant to the covenants and warranties set forth in the purchase agreement.

In response, the Trustee sent a default demand to Tanguy accelerating the terms of the note and demanding full payment of the unpaid principal balance. Shortly thereafter, in March 2009, the Trustee filed a formal adversary proceeding in the bankruptcy court against Tanguy seeking the full unpaid balance on the note, plus interest and attorney's fees.

In April 2009, Tanguy filed an answer and counterclaim against the Trustee for breach of contract or warranty under the purchase agreement, for tortious interference, and for conspiracy to interfere. Tanguy asserted as affirmative defenses the absence of an indispensable party, equivalent value, unclean hands and bad faith, fraud, ordinary course of business, non est factum, failure of consideration, offset, and reformation and/or rescission. Tanguy's answer also included a jury demand.

In response to Tanguy's counterclaims, the Trustee asserted affirmative defenses of failure to state a claim upon which relief can be granted, contributory negligence, estoppel, failure of consideration and fraud, and absolute immunity. The Trustee also filed a motion to strike the jury demand.

---

[2] *Tanguy v. Laux*, 259 S.W. 3d 851, 853 (Tex. App. - Houston 2008).

No. 12-20555

In a pretrial hearing, the bankruptcy court granted the Trustee's motion to strike Tanguy's jury demand. Then in December 2009, the bankruptcy court conducted a trial on the merits and ultimately entered judgment in favor of the Trustee for the amount of $1,183,090.80 (the unpaid balance plus interest), plus $31,180.75 in attorney's fees. In 2010, Tanguy filed a notice of appeal, along with a motion requesting the bankruptcy court to take judicial notice of the Texas state court opinion in *Laux*, 259 S.W. 3d 851, and also a motion seeking "amended or additional findings" pursuant to Bankruptcy Rule 7052. *See* Fed. R. Bankr. P. 7052. The bankruptcy court denied both motions and Tanguy filed his appeal with the district court thereafter.

In his appeal to the district court, Tanguy reasserted all of his original claims before the bankruptcy court and further appealed the bankruptcy court's award of attorney's fees to the Trustee and its rulings granting the Trustee's motion to strike the jury demand, denying Tanguy's motion to take judicial notice, and denying Tanguy's motion for additional findings pursuant to Rule 7052. *See* Fed. R. Bankr. P. 7052. In addition, Tanguy asserted for the first time that the bankruptcy court and the district court lacked subject matter jurisdiction over the proceedings due to the recent U.S. Supreme Court opinion in *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011) (holding that the bankruptcy court lacked subject matter jurisdiction over counterclaims asserted by the *bankruptcy estate against a creditor* where the claim is a "state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in the bankruptcy." (emphasis added)).

As a preliminary matter, the district court ordered the parties to brief the issue of whether the bankruptcy and district courts lacked subject matter jurisdiction over the proceedings on account of *Stern*. After reviewing the parties' briefs and the applicable law, the district court found that *Stern* did not apply and continued with the proceedings. Then, for the reasons set forth in the

No. 12-20555

bankruptcy court's memorandum opinion, in addition to those set forth in its own detailed opinion, the district court affirmed the bankruptcy court judgment in full, including its rulings on the motions to strike jury demand, to take judicial notice, and for additional findings pursuant to Rule 7052. *See* Fed. R. Bankr. P. 7052. The district court also affirmed the bankruptcy court's award of attorney's fees and, finding that the appeal was frivolous, awarded additional fees and costs to the Trustee for the district court proceedings. Tanguy now appeals to this court.

## II.

"This court reviews the decision of a district court sitting as an appellate court in a bankruptcy case 'by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court.'" *In re Pilgrim's Pride Corp.*, 706 F.3d 636, 640 (5th Cir. 2013) (citation omitted). A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *Id.* (citation omitted).

## III.

As an initial matter, we are unpersuaded by Tanguy's argument that neither the bankruptcy court, the district court, nor this court, have subject matter jurisdiction over these proceedings in light of the Supreme Court's opinion in *Stern*. 131 S. Ct. at 2611. As pointed out by the Trustee in his argument on appeal, the current proceedings are distinguishable from *Stern* because they involve a bankruptcy proceeding party's (Tanguy's) counterclaim against the bankruptcy estate itself, for acts which were allegedly committed during the pendency of the bankruptcy proceedings. While it is true that Tanguy names the Trustee in the counterclaims against the estate, he does so explicitly in the Trustee's representative capacity of the estate, not in his private or personal capacity. This posture is contrary to that of *Stern*, which involved a state law counterclaim by the bankruptcy estate against a creditor for acts the

creditor allegedly committed in his private capacity prior to the institution of the bankruptcy proceedings. *Id.* at 2611. Moreover, as this court has previously noted, while it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to "counterclaims by the estate against persons filing claims against the estate," *Stern* expressly provides that its limited holding applies only in that "one isolated respect." *See In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) (quoting *Stern*, 131 S. Ct. at 2620). We decline to extend *Stern's* limited holding herein.

We therefore conclude that the district court and the bankruptcy court properly exercised subject matter jurisdiction over these proceedings and consequently, this court also has subject matter jurisdiction over the proceedings on appeal.

## IV.

With regard to the remaining issues on appeal, we have throughly considered both parties' arguments, including those with respect to the district court's award of attorney's fees for the district court proceedings. We have also reviewed the record, the applicable case and statutory law, the bankruptcy court's well-reasoned memorandum and judgment, and the district court's detailed opinion affirming the bankruptcy court judgment. In light of this analysis, we see no error in the lower court judgments with regard to findings of fact or conclusions of law. *In re Pilgrim's Pride Corp.*, 706 F.3d at 640.

## V.

Accordingly, we AFFIRM the district court's judgment and adopt its analysis in full.