IN RE: Ngo Xuan DINH and Nina 'Nhathuy Dinh, Debtors.

Gulam Gulamali, Plaintiff

v.

Ngo Xuan Dinh and Nina Nhathuy Dinh, Defendants.

Case No. 14–34123
Adversary No. 14–03320

United States Bankruptcy Court, S.D. Texas, Houston Division.

Signed 12/13/2016

William F. Harmeyer, W. F. Harmeyer & Associates, Houston, TX, for Plaintiff.

Timothy Webb, Webb Associates, Houston, TX, for Defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING: (1) LETTER/MOTION OF DEFENDANTS TO RELEASE FUNDS, [ADV. DOC. NO. 50]; (2) RESPONSE OF PLAINTIFF TO DEFENDANTS' LETTER/MOTION TO RELEASE FUNDS AND APPLICATION FOR PAYMENT OF FUNDS FROM COURT'S REGISTRY, [ADV. DOC. NO. 51]; AND (3) INTERVENORS, 3410 TOWNSHIP GROVE, LLC, AND KRISTINE PHAM'S MOTION TO INTERVENE AND APPLICATION FOR PAYMENT OF FUNDS FROM THE COURT'S REGISTRY [ADV. DOC. NO. 57] [This Order Relates to Adv. Doc. Nos. 50, 51, & 57]

Jeff Bohm, United States Bankruptcy Judge

## I. Introduction

Ngo Xuan Dinh ("Mr. Dinh") and Nina Nhathuy Dinh ("Ms. Dinh") are the debtors in the main Chapter 7 case and the defendants in the above-referenced adversary proceeding. On August 22, 2016, Mr. Dinh and Ms. Dinh (collectively, the "Defendants"), now representing themselves *pro se*, filed a hand-written letter/motion regarding, among other issues, the release of certain funds on deposit in the registry of the Court (the "Motion to Release Funds").[1] [Adv. Doc. No. 50]. Gulam Gulamali, the plaintiff (the "Plaintiff"), filed a response to the Motion to Release Funds. [Adv. Doc. No. 51]. On November 10, 2016, this Court held a hearing on the Motion to Release Funds.

The pending dispute between the Plaintiff and the Defendants is this: How much of the proceeds from the sale of the Defendants' homestead (which total $97,000.00 and are sitting in the registry of this Court) should be distributed to the Plaintiff? There is no question that the Plaintiff held a $16,932.72 lien on the homestead prior to its sale, and the Defendants do not dispute that the Plaintiff is entitled to a distribution in this amount. However, the Defendants assert that the Plaintiff is not entitled to a dime more. For his part, the Plaintiff, who holds a $50,000.00 non-dischargeable judgment against Mr. Dinh, takes the position that the proceeds are no longer exempt because more than six months has passed since the sale of the homestead; and that, therefore, the Plaintiff is entitled to a distribution not only of the $16,932.72 but also of the remaining balance owed under the judgment after application of the $16,932.72—i.e., $33,067.28.

Pursuant to Federal Bankruptcy Rules 9014 and 7052, this Court now issues the

---

1. At trial, the Defendants were represented by an attorney. However, since the conclusion of the trial, they have been representing themselves *pro se*. The Motion to Release Funds was actually written by the daughter of the Defendants, as her written English is better than that of her parents.

following Findings of Fact and Conclusions of Law. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party. For the reasons set forth herein, the Court finds that the Plaintiff is entitled to a distribution of only $16,932.72.

## II. FINDINGS OF FACT

The findings of fact relevant to the Motion to Release Funds are as follows:

1. On October 29, 2015, this Court entered a judgment in the above-referenced adversary proceeding (the "Judgment"). [Adv. Doc. No. 29]. The Judgment set forth that the debt owed by Mr. Dinh to the Plaintiff in the amount of $50,000.00 is a non-dischargeable debt. [*Id.*]. The Judgment also ordered that "an equitable lien in the amount of $16,932.72 [be] attached to the townhome property commonly known as 3410 Township Grove Lane, Houston, Texas 77082 [ (the "Townhome") ]." [*Id.*]. The Townhome is the Defendants' homestead, and they claimed this property as exempt in their Schedule C in their main case. [Main Case No. 14–34123, Doc. Nos. 1 & 17]. Aside from granting the Plaintiff an equitable lien on the Townhome, the Judgment set forth that the Plaintiff is "entitled to pursue all actions necessary to foreclose his equitable lien on the [T]ownhome under applicable Texas law." [Adv. Doc. No. 29]. The Defendants did not appeal the Judgment.

2. On February 12, 2016, at the Plaintiff's request, the Clerk of Court issued an Abstract of Judgment for the benefit of the Plaintiff. [Adv. Doc. No. 31].

3. Also, on February 12, 2016, at the Plaintiff's request, the Clerk of Court issued a Writ of Execution to the U.S. Marshals Service commanding the Service to sell the Townhome for an amount sufficient to pay the Judgment in full and the cost of the writ. [Adv. Doc. No. 32].

4. On March 30, 2016, the U.S. Marshals Service levied on the Townhome. [Adv. Doc. No. 39].

5. On March 31 and April 2, 2016, the U.S. Marshals Service served process on the Defendants. [Adv. Doc. Nos. 37 & 38]. The documents completed and filed by the deputy U.S. Marshal who served process reflect that he personally traveled to the Townhome and met with Mr. Dinh on March 31, 2016 and Ms. Dinh on April 2, 2016 to serve the Writ of Execution on them, thereby giving them notice that the U.S. Marshals Service would be executing upon the Townhome.

6. On April 22, 2016, public notice was given setting forth that the U.S. Marshals Service, by virtue of the Writ of Execution, would hold a public auction to sell the Townhome on May 3, 2016 at 10:00 A.M. at the Bayou City Event Center, 9401 Knight Road, Houston, Texas 77045. [Adv. Doc. No. 40].

7. On May 3, 2016, the U.S. Marshals Service held a public auction to sell the Townhome. The highest bidder was Kristine Pham ("Ms. Pham"), who bid the cash sum of $97,000.00 for the Townhome (the "Sale Proceeds"). [Adv. Doc. No. 57].

8. On May 30, 2016, the Plaintiff filed his Application for Approval of Sale of Property and Issuance of Deed (the "Application to Sell"). [Adv. Doc. No.

43]. The Application to Sell requests this Court to enter an order that: (a) approves the sale of the Townhome to Ms. Pham; and (b) authorizes the U.S. Marshals Service to execute and deliver a deed for the Townhome to Ms. Pham. [*Id.*].

9. Also, on May 30, 2016, the Plaintiff filed his Motion to Deposit Monies Into the Registry of the Court (the "Motion to Deposit"). [Adv. Doc. No. 42]. The Motion to Deposit requested this Court to order that the Sale Proceeds being held by the U.S. Marshals Service be deposited into the registry of the Court and to remain on deposit until further order of this Court. [*Id.*].

10. On June 3, 2016, this Court granted the Application to Sell. [Adv. Doc. No. 46].

11. Also, on June 3, 2016, this Court granted the Motion to Deposit and entered an order entitled: "Order Allowing Deposit of Monies into the Registry of the Court." [Adv. Doc. No. 47].

12. On August 2, 2016, the U.S. Marshals Service, which had been holding the Sale Proceeds since receiving the payment from Ms. Pham, deposited the Sale Proceeds into the registry of the Court.

13. On August 22, 2016, the Defendants, representing themselves *pro se*, filed the Motion to Release Funds. [Adv. Doc. No. 50]. Among other things, the Defendants request that the funds from the sale of the Townhome, after payment of the mortgage, be released to them. [*See id.* at p. 2 of 2].

14. On September 12, 2016, the Plaintiff filed a pleading responding to the Motion to Release Funds and affirmatively applying for distribution of the funds to himself (the "Response/Application"). [Adv. Doc. No. 51]. In the Response/Application, the Plaintiff, in pertinent part, "petitions this Court for an Order of payment to him for his equitable lien amount of $16,932.72 in the [Townhome]. as awarded in the Judgment ... [and] for the remaining sums deposited into the Court's registry for the remaining amount due to him under the Judgment, in the amount of $33,067.28." [*Id.* at p. 4 ¶¶9–10]. In the Response/Application, the Plaintiff argued that he should receive a distribution for the $33,067.28 because he obtained the Judgment due to proving that Mr. Dinh had defrauded him. [*Id.* at p. 4 ¶10]. Essentially, the Plaintiff put forth the argument that as a matter of equity, due to Mr. Dinh's skullduggery, the Plaintiff should receive a distribution of $50,000.00 (enough to completely pay off the Judgment) even though his lien on the Townhome is only in the amount of $16,932.72. [*See id.* at pp. 4–5 ¶12].

15. On October 20, 2016, Ms. Pham filed her Motion to Intervene and Application for Payment of Funds from the Court's Registry (the "Motion to Intervene"). [Adv. Doc. No. 57]. Ms. Pham sought to intervene because when she purchased the Townhome at the public auction held on May 3, 2016, she did not know that there was an existing lien on the Townhome in the approximate amount of $32,362.59. This lien was held by Ms. Jennifer Nguyen ("Ms. Nguyen"), who had extended a loan to the Defendants to facilitate their purchase of the Townhome. [*Id.* at p. 2 ¶3]. After Ms. Pham purchased the Townhome and discovered the exis-

tence of this lien, she made payment to Ms. Nguyen in order to own the Townhome free and clear. Ms. Pham thus seeks an order from this Court allowing her to intervene in this adversary proceeding and to recover the amount she paid to retire the lien held by Ms. Nguyen.

16. On November 4, 2016, the Plaintiff's counsel filed a brief in support of the Response/Application. [Adv. Doc. No. 59]. In this brief, in addition to making the equitable argument that he made in the Response/Application, the Plaintiff also adds an argument as to why he should receive a distribution of $50,000.00 instead of $16,932.72. Specifically, citing Texas Property Code § 41.001(c) and *Viegelahn v. Frost*, 744 F.3d 384, 387–89 (5th Cir. 2014), among other cases, the Plaintiff argues that the six-month safe harbor period on the Sale Proceeds expired as of 11:59 P.M. on November 3, 2016, and that therefore the Sale Proceeds are no longer exempt property, thus allowing the Court to order a distribution to the Plaintiff of the entire amount of the Judgment debt—i.e., $50,000.00. [*Id.* at p. 4 ¶8].

17. On November 10, 2016, this Court held a hearing on the Motion to Release Funds, the Response, and the Motion to Intervene. Ms. Pham and both of the Defendants testified at this hearing, and then the Court heard oral argument from all parties as to how the Sale Proceeds should be distributed.

   a. The Plaintiff took the position that the Sale Proceeds should be distributed in the following amounts (which this Court rounds off for purposes of ease):

| | |
|---|---|
| Total Proceeds: | $97,000.00 |
| Less: Distribution to Ms. Pham: | $31,000.00 |
| Less: Distribution to the Plaintiff: | $50,000.00 |
| Remaining Amount for the Defendants: | $16,000.00 |

   b. The Defendants took the position that the Sale Proceeds should be distributed as follows:

| | |
|---|---|
| Total Proceeds: | $97,000.00 |
| Less: Distribution to Ms. Pham:[2] | $31,000.00 |
| Less: Distribution to the Plaintiff: | $16,900.00 |
| Remaining Amount for the Defendants: | $49,100.00 |

18. After hearing arguments from the parties, the Court issued an oral ruling that: (a) Ms. Pham is entitled to receive $30,715.43; (b) the Plaintiff is entitled to receive only the amount of his equitable lien, i.e., $16,932.72; and (c) the Defendants are entitled to receive with the remaining proceeds. Thus, the Court ruled that the distribution should be as follows:

| | |
|---|---|
| Total Proceeds: | $97,000.00 |
| Less: Distribution to Ms. Pham: | $30,715.43 |
| Less: Distribution to the Plaintiff: | $16,932.72 |
| Remaining Amount for the Defendants: | $49,351.85 |

19. After issuing its oral ruling on November 10, 2016, but before this Court entered a written order on the docket memorializing this ruling, the Plaintiff, through its counsel of record, filed a letter/brief on November 28, 2016, [Adv. Doc. No. 60]. In this letter/brief, the Plaintiff expands the argument that he made in the brief in support of the Response/Application as to why he should receive a distribution of $50,000.00. [See Finding of Fact No. 16]. Here, the Plaintiff argues that he is entitled to the entire $50,000.00 under the Judgment because the Defendants can no longer claim the Sale Proceeds as exempt property. [Adv. Doc. No. 60]. In support of this position, the Plaintiff cites case law that the Sale Proceeds lost their exempt status as of November 4, 2016—i.e., six months after the sale of the Townhome—because the Defendants had neither used the Sale Proceeds to purchase a new homestead nor requested this Court to toll the six-month safe harbor period during which the Sale Proceeds were exempt under Texas Property Code § 41.001(c). [Id.]. Thus, the Plaintiff wants this Court to enter an order authorizing the Clerk of Court to distribute the Sale Proceeds as follows:

2. The Defendants do not dispute Ms. Pham's request to receive a distribution for her paying off the lien held by Ms. Nguyen (the original lienholder on the Townhome). [Hr'g held on Nov. 10, 2016, at 12:35:26–12:36:15 P.M.]. Specifically, they do not have any dispute with this Court entering an order distributing to Ms. Pham the amount of $28,000.00. [Id.]. They object to a higher distribution because they believe they owed Ms. Nguyen the amount of $28,000.00 on the date that the Townhome was sold. [Id.]. However, Ms. Pham's credible testimony, together with certain calculations made by this Court, convinces this Court that the amount owed was a bit higher than $28,000.00. [Id. at 11:17:59–11:18:17 P.M.; 1:07:08–1:07:39 P.M.].

| Total Proceeds: | $97,000.00 |
| Less: Distribution to Ms. Pham: | $30,715.43 |
| Less: Distribution to the Plaintiff: | $50,000.00 |
| Remaining Amount for the Defendants: | $16,284.57 |

20. On December 5, 2016, the Defendants responded to the letter/brief filed by the Plaintiff's counsel by arguing that the six-month safe harbor period has not expired because they have had no access to the Sale Proceeds since the Townhome was sold, and therefore could not possibly have used the Sale Proceeds to purchase another homestead. Stated differently, the Defendants assert that the six-month safe harbor period has not yet run, but rather was tolled, because the Sale Proceeds were first controlled by the U.S. Marshals Service and, since August 2, 2016, have been controlled by the Clerk of Court, who has held the Sale Proceeds in the registry of the Court. Thus, the Defendants want this Court to stand by its oral ruling made at the November 10, 2016 hearing that the Clerk of Court distribute the Sale Proceeds as follows:

| Total Proceeds: | $97,000.00 |
| Less: Distribution to Ms. Pham: | $30,715.43 |
| Less: Distribution to the Plaintiff: | $16,932.72 |
| Remaining Amount for the Defendants: | $49,351.85 |

## III. CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

#### 1. Jurisdiction

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(b). This provision provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11," District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012–6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The dispute at bar is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because it affects the debtor-creditor relationship. Specifically, if the Sale Proceeds are not exempt, then the Plaintiff is entitled to a distribution of $50,000.00, which is sufficient to pay off the Judgment in its entirety—thereby resulting in the Plaintiff no longer being a creditor of the Defendants. Conversely, if the Sale Proceeds are exempt, then the Plaintiff is entitled to a distribution of only $16,932.72, which is insufficient to pay off the Judgment in its entirety—thereby resulting in the Plaintiff still being a creditor of the Defendants in the amount of $33,067.28.

#### 2. Venue

Venue is proper pursuant to 28 U.S.C. § 1409(a) because this is an adversary pro-

ceeding arising under Title 11 or arising in or related to the main Chapter 7 case filed by the Defendants. That is to say, the Plaintiff initiated this adversary proceeding seeking a judgment that the Defendants owed him a debt that is non-dischargeable under 11 U.S.C. § 523(a). Such a suit is a proceeding that arises under Title 11. *See In re Cimarolli*, Adv. No. 04–3250, 2006 WL 2090212, at *1 (Bankr. S.D. Tex. July 11, 2006). Moreover, this Court's adjudication of this suit relates to the Defendants' main Chapter 7 case because how much of a non-dischargeable obligation Mr. Dinh owes to the Plaintiff directly affects how much of a "fresh start" the Defendants receive as a result of their filing a Chapter 7 petition in this Court.

### 3. Constitutional Authority to Enter a Final Order

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute pending before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503, 131 S.Ct. 2594. The pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under § 157(b)(2)(O) is entirely different than a core proceeding under § 157(b)(2)(C). *See,*

*e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also In re Davis*, 538 Fed.Appx. 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. W.*, —— U.S. ——, 134 S.Ct. 1002, 187 L.Ed.2d 851 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' ... We decline to extend *Stern's* limited holding herein.").

In the alternative, this Court has the constitutional authority to enter a final order because all of the parties in this matter have consented to adjudication of this dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, —— U.S. ——, 135 S.Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent ....."). Indeed, the Defendants filed the Motion to Release Funds, [Finding of Fact No. 13]; the Plaintiff filed the Response/Application, [Finding of Fact No. 14]; Ms. Pham filed the Motion to Intervene, [Finding of Fact No. 15]; the Court held a hearing on November 10, 2016, [Finding of Fact No. 17]; the Plaintiff filed his letter/brief on November 28, 2016, [Finding of Fact No. 19]; the Defendants filed their response to the letter/brief on

December 5, 2016, [Finding of Fact No. 20]; and none of the parties—orally or in writing—ever objected to this Court entering a final order on any of the pleadings that they filed. The Court finds that these circumstances constitute consent of all of the parties for this Court to enter a final order in the dispute at bar.

### B. Case Law Regarding Exemption of Proceeds From Sale of Homestead

■ The Sale Proceeds on deposit in the registry of the Court originated from the sale of the Townhome by the U.S. Marshals Service. [Findings of Fact Nos. 1 & 7]. Under the Texas Property Code, "proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." Tex. Prop. Code Ann. § 41.001(c). Stated differently, the proceeds from the sale of a homestead are considered "exempt" (and protected from creditors) for only six months following the date of sale. *In re Garcia*, 499 B.R. 506, 511 (Bankr. N.D. Tex. 2013) ("Section 41.001(c) of the Texas Property Code provides that when a Texas homeowner sells his homestead, the proceeds are exempt for only six months from the date of the sale.") (citing Tex. Prop. Code Ann. § 41.001(c)). Thus, if the sale proceeds are not applied to the purchase of a new homestead within six months of the date of sale, the exemption status is lost. *In re Morgan*, 481 Fed.Appx. 183, 187 (5th

Cir.2012) (stating that the "proceeds [from the sale of the homestead] lost their exempt status when [the debtor] failed to reinvest them in a new Texas homestead within six months").

■ However, some courts have allowed the tolling of the six-month statutory period if a party specifically requests the court to toll the six-month period before the expiration of the deadline. *See, e.g., In re Crum*, 414 B.R. 103, 110 (Bankr. N.D. Tex. 2009) (stating that tolling is only appropriate when "the debtor . . . take[s] some action to protect his rights (i.e., request tolling) before the rollover period expires").[3] It is appropriate to review these cases to determine if their holdings are applicable in the dispute at bar. In reviewing these cases, this Court keeps in mind that homesteads have been recognized as "favorites of [Texas] law" and "[a court] must give liberal construction to the constitutional and statutory provisions that protect homestead exemptions." *Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992); *see Wallace v. First Nat. Bank*, 120 Tex. 92, 35 S.W.2d 1036, 1040 (1931) ("The courts of this state have held, and it is now undoubtedly the settled rule, that the homestead laws are to be liberally construed to effectuate their beneficent purposes.").

In *In re Bading*, the debtor owned two contiguous tracts of land—one on which a house was built. 376 B.R. 143, 146 (Bankr.

3. The Court in *Crum*, 414 B.R. at 110, expressly cited the Fifth Circuit's opinion of *In re Zibman*, 268 F.3d 298 (5th Cir. 2001), for the proposition that a debtor can toll the six-month safe harbor period by taking "some action to protect his rights (i.e., request tolling) before the rollover period expires." There is no question that in a footnote in *Zibman*, the Fifth Circuit discussed the tactic of seeking a tolling of the six-month period. *Zibman*, 268 F.3d at 305 n.30. However, the Fifth Circuit expressly declined to state whether the six-month safe harbor period could in fact be

tolled: "Although the Zibmans allude in their argument to the possibility that the six months could be tolled during the bankruptcy proceeding, they did not seek such tolling in the bankruptcy court before the balance that remained on the 6-month period at filing eventually ran out. We therefore do not address that issue except to note that a Texas Court of Appeals has allowed the six months to be tolled during periods of dispute." *Id.* (citation omitted). Thus, there is no controlling decision from the Fifth Circuit that the six-month period can be tolled.

W.D. Tex. 2007). A creditor eventually obtained a judgment against both the tract where the debtor's house was located as well as the adjacent tract. *Id.* The debtor later found a buyer to purchase the two tracts but the creditor's abstract of judgment prevented her from consummating the sale on both tracts. *Id.* The creditor consented to releasing its lien on the tract where the house was built, which allowed the buyer to purchase this one tract first and hold off on closing on the second tract until the debtor could resolve the abstract of judgment lien issue. *Id.* When the debtor filed for bankruptcy, she claimed as exempt property both the unsold tract as well as the proceeds from the sale of the other tract. *Id.* The creditor contended that the debtor's homestead exemption in the sale proceeds of the sold tract was lost unless the debtor reinvested those proceeds in another homestead within six months of the sale of this tract. *Id.* at 147. In response, the debtor filed a motion seeking to toll the running of the six-month period for reinvesting the sale proceeds into a new homestead. *Id.*

The court ruled as follows:

[F]or so long as the proceeds from the sale of a homestead are tied up—whether by a title company or by a Hobson's choice created by the creditor—in such a way that only judicial intervention can resolve the problem, then the creditor should not, in equity, be able to reap an unwarranted benefit from its own position (regardless the *bona fides* of that position), to wit, depriving the debtor of all or any part of her homestead interest by the *fiat* of the passage of time needed to resolve the dispute put into play by the creditor's own legal position. For so long as the dispute remains unresolved, the debtor could not be expected to reinvest proceeds—especially when doing so would all but have required her to give up part of her homestead just to make sure she acted within six months. The creditor's legal position, regardless its motivation, should not result in a windfall to the creditor, especially when that windfall is the destruction of a Texas debtor's homestead rights.

*Id.* at 153–55 (emphasis in original). Thus, based on the above reasoning, the court concluded that the six-month period did not begin to start running until the date that the debtor closed the sale on the second tract—i.e., closed the sale on *all* of her homestead (which, in this case, was two contiguous tracts). *Id.* at 155.

In *Hodes v. Diagnostic Experts of Austin*, the court of appeals affirmed the district court's decision that: (a) denied the debtor's motion to dissolve the writ of garnishment on the proceeds generated from the sale of the debtor's homestead; and (b) precluded the debtor from claiming the sale proceeds of her homestead as exempt. No. 03–09–00185–CV, 2010 WL 2867344, *3 (Tex. App.—Austin July 22, 2010). Prior to filing for bankruptcy, Diagnostic Experts of Austin (Diagnostic) had sued the debtor in state court, but when the debtor filed her bankruptcy petition, the suit was removed to the bankruptcy court, which subsequently ordered her to pay Diagnostic over $3 million. *Id.* at *1. In her bankruptcy case, the debtor claimed two tracts of land—which she owned with her ex-husband—as her exempt homestead. *Id.* Later, she and her ex-husband agreed to sell both tracts. *Id.* The tracts were later sold and the proceeds were placed in a trust. *Id.* A few months after the bankruptcy court issued the judgment and over six months after the proceeds were placed in the trust, Diagnostic filed an application for writ of garnishment seeking the release of funds held in the trust. *Id.* The debtor opposed Diagnostic's request and argued that the funds were exempt because they were proceeds from

the sale of her homestead. *Id.* Without determining whether Texas law allows for tolling of the six-month period, the court in *Hodes* affirmed the district court's decision because "[n]othing in the record ... suggests that [the debtor] ever specifically asked the district court or any court to toll the statutory deadline before the deadline expired." *Id.* at *3.

The lesson of *Bading* and *Hodes* is that if a debtor wants to stop the clock from running on the six month safe harbor period, the debtor, must request the court to toll the running of this period. The debtor cannot simply sit on his or her hands and expect that the six-month safe harbor will not run.

### C.  Analysis of the Dispute at Bar

In the suit at bar, the Townhome was sold for $97,000.00—all of which were proceeds first held by the U.S. Marshals Service and then deposited into the registry of the Court. [Findings of Fact Nos. 7, 9, 10, 11, & 12]. Pursuant to the Judgment, the Plaintiff owns an equitable lien of $16,932.72. [Finding of Fact No. 1]. However, the Plaintiff not only requests the distribution of $16,932.72 from the Sale Proceeds (pursuant to its equitable lien set forth in the Judgment), he also seeks distribution for the remaining amount due to him under the Judgment (i.e., $33,067.28). [Finding of Fact No. 14].

On May 3, 2016, the Townhome was sold, [Finding of Fact No. 7]; the U.S. Marshals received the Sale Proceeds and held them until August 2, 2016, [Finding of Fact No. 12]; and then, on August 2, 2016, the Sale Proceeds were deposited into the registry of the Court, [*Id.*]. Pursuant to Texas Property Code § 41.001(c), the Sale Proceeds are considered exempt for six months following the date of sale of the Townhome—or, until 11:59 P.M. on November 3, 2016. The Plaintiff contends that

the Sale Proceeds "are no longer subject to the 'safe harbor' homestead protections of Texas Property Code § 41.001(c) because more than six months have elapsed since the May 3, 2016[ ] sale of the [Townhome]." [Adv. Doc. No. 60]. The Plaintiff suggests that tolling the six-month period is impermissible; however, the Plaintiff argues that even if tolling of the six-month period is allowable, "at no time before the expiration of the six-month statutory period did the Defendants request that the Court toll the six-month statutory period." [*Id.*]. Thus, the Plaintiff contends that all of the Sale Proceeds automatically became non-exempt on November 4, 2016 and that therefore the Court should authorize a distribution of $50,000.00, not just $16,932.72 to him.

■ As stated above, Texas homestead exemptions must be "liberally construed to effectuate their beneficent purposes." *Wallace*, 35 S.W.2d at 1039. "Thus, when homestead-sale proceeds have been withheld from the homestead claimant, courts may equitably toll the six-months' statutory exemption to prevent the claimant from being irrevocably deprived of the exemption's benefits." *London v. London*, 342 S.W.3d 768, 776 (Tex. App.—Houston [14th Dist.] 2011). Here, the U.S. Marshals Service had complete control of the Sale Proceeds from May 3, 2016 until August 2, 2016, [Findings of Fact Nos. 9, 11, & 12]; the Defendants had no access to these proceeds during this three-month period. Then, the Sale Proceeds were deposited into the registry of the Court and have been sitting in the registry since August 2, 2016. [*See* Finding of Fact No. 12]. Once again, while the Sale Proceeds had been sitting in the registry of the Court, the Defendants had no access to these proceeds. Without access to the Sale Proceeds since the date of the sale of the Townhome, the Defendants have been unable to

use the Sale Proceeds to purchase another homestead during the six-month period between May 3, 2016 and November 3, 2016.

However, twenty days after the Sale Proceeds were deposited into the registry (on August 22, 2016)—i.e., prior to the expiration of the six-month safe harbor period—the Defendants filed the Motion to Release Funds. [Finding of Fact No. 13]. While the Defendants, representing themselves *pro se*, did not specifically request that this Court toll the six-month statutory period in the Motion to Release Funds, they certainly indicated that they wanted to obtain control of the Sale Proceeds by asking this Court "how would [the Court] release whatever was left from mortgage [i.e., the Sale Proceeds][?]" [Adv. Doc. No. 50, p. 2 of 2]. This Court construes the Defendants' language as a request to allow them to gain control over the Sale Proceeds, a request that this Court finds is at least as compelling as—if not more compelling than—a request to toll the six-month safe harbor period. Moreover, it must be remembered that the Defendants now represent themselves *pro se*, and therefore they are not well-versed in drafting pleadings. It is nevertheless clear from the mere fact that the Defendants are asking in the Motion to Release Funds how they can gain access the Sale Proceeds that they are essentially asserting their exemption claim to the Sale Proceeds prior to the expiration of the six-month safe harbor period. *See U.S. v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) ("To penalize Riascos for less-than-perfect pleading is a clear violation of the rule that courts must liberally construe *pro se* pleadings.").

However, this Court could not simply order the Clerk of Court to distribute all of the Sale Proceeds to the Defendants at their mere request because the Plaintiff filed the Response/Application and requested this Court to pay him "the remaining sums deposited into the Court's registry for the remaining amount due to him under the Judgment, in the amount of $33,067.28." [Adv. Doc. No. 51, p. 4 ¶10]. Therefore, until this Court held a hearing and issued a ruling, the Court was unable to resolve the issue of how the Sale Proceeds should be distributed, as the Response/Application opposes the Defendants' request that they should receive all of the Sale Proceeds. Due to this conflict, the Court did not release the Sale Proceeds on deposit in the registry of the Court to any party, but rather kept the Sale Proceeds in the registry and held a hearing.

Given the above-described circumstances and the law liberally construing homestead exemptions, this Court now equitably tolls the six-month statutory exemption period, effective May 3, 2016. *See London*, 342 S.W.3d at 776 ("[W]hen homestead-sale proceeds have been withheld from the homestead claimant, courts may equitably toll the six-months' statutory exemption to prevent the claimant from being irrevocably deprived of the exemption's benefits."); *see also Jones v. Maroney*, 619 S.W.2d 296, 297–98 (Tex. App.—Houston [1st Dist.] 1981, no writ) ("[T]he purpose for which the statute was enacted would be destroyed if the court would not toll the statute during the period of time the proceeds were involved in court litigation."). Thus, the Sale Proceeds, which were generated from the sale of the Townhome, constitute the exempt property of the Defendants pursuant to Texas Property Code § 41.001(c). Contrary to the Plaintiff's assertion, the six-month safe harbor period has not already expired, as the Sale Proceeds have been tied up in the litigation among the Defendants, the Plaintiff,

and Ms. Pham.[4]

## IV. CONCLUSION

Because the Sale Proceeds are exempt, the only valid and enforceable claims at this time on the Sale Proceeds are the purchase money lien held by Ms. Nguyen (which Ms. Pham paid off) and the equitable lien awarded to the Plaintiff by this Court in the Judgment. [Findings of Fact Nos. 1 & 15]. Thus, the appropriate distribution for the Clerk of Court to make is as follows:

| | |
|---|---|
| Total Proceeds: | $97,000.00 |
| **Less**: Distribution to Ms. Pham: | $30,715.43 |
| **Less**: Distribution to the Plaintiff: | $16,932.72 |
| Remaining Amount for the Defendants: | $49,351.85 |

Once this Court enters an order on the docket regarding the Motion to Release Funds, the Response/Application, and the Motion to Intervene (the "Order"), the clock will start running on the six-month safe harbor period. *See Maroney*, 619 S.W.2d at 298 ("Thus, the statutory period in which the proceeds from the above sale would be exempt for 6 months would date from August 19, 1980 [i.e., the date that the court entered judgment for the homestead claimants]."). During this six-month period, the $49,351.85 will constitute exempt property of the Defendants, and they will be allowed to use the $49,351.85 to purchase another homestead. However, if the Defendants fail to use these funds to purchase another homestead during this six-month period, then on the 181st day following entry of the Order, the funds will automatically become non-exempt property to which the Plaintiff can look to satisfy the balance of the $33,067.28 owed under the Judgment.

---

4. The Plaintiff has cited two of the undersigned judge's opinions in support of his argument that the safe harbor period has already expired. [Doc. No. 59, p. 4 ¶8]; [Doc. No. 60, p. 2 of 3]. Specifically, he cites *In re Smith*, 514 B.R. 838 (Bankr. S.D. Tex. 2014), and *In re Hawk*, 524 B.R. 706 (Bankr. S.D. Tex. 2015), *aff'd* 556 B.R. 788 (S.D. Tex. 2016). *Smith* involved proceeds from the sale of the debtor's homestead, whereas *Hawk* involved proceeds generated from the debtors' withdrawal of all of the funds from an IRA. In *Smith*, this Court held that the sale proceeds became non-exempt on the 181st day after the sale of the debtor's homestead pursuant to § 41.001(c) of the Texas Property Code because the debtor did not use the proceeds during the six-month safe harbor period to purchase a new homestead. 514 B.R. at 843. In *Hawk*, this Court held that the withdrawn funds became nonexempt on the 61st day after withdrawal because § 42.0021 of the Texas Property Code requires reinvestment IRA funds within 60 days, and the debtors failed to roll over the liquidated IRA funds within 60 days. 524 B.R. at 714. The matter at bar is distinguishable from *Smith* and *Hawk* in one very important respect. In *Smith* and *Hawk*, the debtors had complete control over the proceeds from the sale of the homestead and the liquidation of the IRA, whereas here, the debtors have had absolutely no access to the Sale Proceeds since the day that the U.S. Marshals held the auction selling the Townhome. Thus, in *Smith* and *Hawk*, the debtors had no justifiable basis to toll the running of the safe harbor periods afforded by § 41.001(c) and § 42.0021 of the Texas Property Code. Here, the Defendants do have a justifiable basis.

An order consistent with these Findings of Fact and Conclusions will be entered on the docket simultaneously herewith.