# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3290

_____

Cory Sessler

*Plaintiff - Appellant*

v.

City of Davenport, Iowa; Greg Behning, in his individual capacity acting as a police officer for the City of Davenport, Iowa; Jason Smith, in his individual capacity acting as a police officer for the City of Davenport, Iowa; J.A. Alcala, in his individual capacity acting as a police officer for the City of Davenport, Iowa

*Defendants - Appellees*

_____

No. 19-3310

_____

Cory Sessler

*Plaintiff - Appellee*

v.

City of Davenport, Iowa; Greg Behning, in his individual capacity acting as a police officer for the City of Davenport, Iowa; Jason Smith, in his individual capacity acting as a police officer for the City of Davenport, Iowa; J.A. Alcala, in his individual capacity acting as a police officer for the City of Davenport, Iowa

*Defendants - Appellants*

_____

MELLOY, Circuit Judge.

Plaintiff Cory Sessler appeals the denial of his motion for a preliminary injunction, which sought to enjoin Defendants from enforcing Davenport's Special Events Policy against him. Both parties appeal. We affirm the order of the district court.[1]

## I. Background

Street Fest is an annual event in downtown Davenport (the City) that coincides with the annual Quad Cities "Bix 7" road race. The race usually has 12,000–18,000 runners. Street Fest is organized by the Downtown Development Partnership and has been an annual two-day festival in the City for over forty years. It draws approximately 20,000 total attendees each year. According to Street Fest's organizer, the festival provides its thousands of attendees a convenient way to access food, shopping, live music, and family activities. It provides a way for permitted vendors to showcase their food, beverages, and products to a large number of people.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Outdoor events, such as Street Fest, are governed by the City's Special Events Policy (the Policy), which provides requirements for event organization and management. Before an outdoor event can take place, event organizers must submit an online application for the City's approval. Events are required to have security on site, including Davenport Police Officers. Events may have vendors and food stalls as long as all vendors have necessary permits.

In 2018, having received approval from the City, Street Fest was held from July 27–28 on public streets and sidewalks in downtown Davenport—covering Second Street between Ripley Street and Brady Street. The streets were closed to vehicles. The designated festival area was surrounded by six-foot-high temporary chain-link fence and had multiple entrance gates. Tickets were not required for entrance, but festival security personnel monitored all entrance and exit areas. The City required Street Fest to hire off-duty police officers to provide security at the event. On-duty officers were also present, including Defendants–Officers Greg Behning, Jason Smith, and J.A. Alcala.

To generate revenue, Street Fest organizers issued vendor permits for a fee. Vendor permits were issued with the express qualification that vendor presentations were subject to review, and, if necessary, exclusion, if vendors interfered with the safety and convenience of festival attendees or otherwise disrupted the festival's objective of providing a wide variety of family activities. Vendors were prohibited from playing music at their booths and had to obtain pre-approval to distribute literature or extend their activities beyond the confines of their assigned booths.

On July 28, 2018, Sessler, a resident of Iowa, and his colleagues attended Street Fest as members of the public. They did not have a vendor permit, nor had they applied for one. Sessler and his colleagues had signs on extendable poles with messages such as: "Hell is enlarged for adulterers . . . homosexuals . . . abortionists

. . . ."; "Fake Christians . . . don't . . . smoke, vape, and get high . . . and think they're saved"; and "Warning: if you are involved in . . . sex out of marriage, homosexuality, drunkenness, night clubbing . . . you are destined for a burning hell." Sessler preached similar messages using a microphone and speaker.

Sessler's group initially congregated at the corner of Second Street and Main Street, which was a location assigned to a fee-paying juggling and magic vendor. The vendor complained to Street Fest organizers that Sessler was in their assigned spot. Another vendor complained to Officer Behning that Sessler was telling her customers they were going to hell. Several attendees also complained to Officer Behning that the activities of Sessler and his group were disturbing the festival.

Officers Behning, Smith, and Alcala approached Sessler and his colleagues and asked them to move to another location. Officer Smith proposed, and Sessler agreed, to investigate whether a location in front of a particular entrance, the Skybridge entrance on Second Street, would be an acceptable location for his activities. The second location was unacceptable to Sessler because it was behind vendor tents, which blocked Sessler from people and separated him from the street where most of the people were located. Sessler and his group were allowed to move, instead, to an area near Street Fest's entrance on Brady Street and Second Street. Sessler and his group preached near this other Street Fest entrance for approximately thirty minutes until Street Fest organizers received more complaints from attendees and vendors.

After receiving these additional complaints, Officer Behning told Sessler he had to leave the festival area and, if he did not leave the festival area, he would be subject to arrest. Officer Behning told Sessler that he could continue his street preaching activities outside the festival area, across the street from one of the Street Fest entrances. Sessler and his colleagues preached directly across the street from the Street Fest festival on the City's sidewalks for approximately two to three more hours.

-4-

Sessler was not asked to move from this final location and had no further interaction with the City's law enforcement.

Approximately one month later, on August 15, 2018, Sessler contacted the office of the City Attorney to discuss what had happened at Street Fest. Assistant City Attorney Mallory Hoyt told Plaintiff that she had reviewed the incident and the officers' actions were lawful. According to the City, because Street Fest was a permitted event, approved under the City's Special Events Policy, the Street Fest organizers had the authority to request Sessler's removal from the festival area.

On January 31, 2019, Sessler filed suit seeking injunctive and declaratory relief, damages, and attorney fees. Sessler named as Defendants the City of Davenport and the three police officers with whom he interacted at Street Fest. The Complaint states that it "challenges the interpretation and enforcement" of the City's Special Events Policy. It alleges Defendants violated Sessler's First Amendment rights to free speech (Count 1) and free exercise (Count 2) by enforcing the Policy against Sessler on July 28, 2018 at Street Fest. The Complaint provides portions of the Policy, including:

- This document sets forth the guidelines for the implementation of the Special Events Policy by the City of Davenport. It defines, categorizes, and sets a fee structure for all Special Events.

- It is the purpose of this policy to regulate special outdoor events conducted in the City of Davenport so that such events can be held with the safety and health of participants in mind, the protection of public property considered, and the impact of the event on non-participating citizens minimized.

- Special Event refers to outdoor events that include . . . festival . . . .

-5-

- The City shall be charged with the responsibility of determining whether a particular sponsor shall be entitled to conduct an outdoor special event.

- Sponsors who wish to make a request for a special event shall submit an online application located on the City's website.

The Complaint states that "[o]n upcoming days – including but not limited to days in November 2018 through December 2022 – [Sessler] has concrete plans to engage in his constitutionally-protected activities by peacefully expressing religious, political, and social speech within the City's Public Spaces."[2]  It also alleges that, because "of Defendants' prior enforcement of the Policy, [Sessler] is forfeiting his constitutionally-protected activities due to fear of arrest, incarceration, and fines."

Sessler contemporaneously moved for a preliminary injunction, requesting the district court enjoin Defendants "from restricting and limiting his rights to peacefully share his message of faith by speaking with people, displaying signs, and/or distributing literature to those willing to receive it, in the public parks, public streets, public sidewalks, and public rights-of-way within the jurisdiction of the City."  With Sessler's acquiescence, the district court allowed the City to conduct discovery before responding to the motion for a preliminary injunction.  The parties collected cell phone and officer body camera footage of the Street Fest incident, conducted depositions, and agreed on a set of stipulated facts for purposes of a hearing on the motion.  The district court held a hearing in July 2019.  It issued an order denying Sessler's request on September 24, 2019.  The district court found that Street Fest was a traditional public forum and that, although Sessler engaged in protected speech at Street Fest, the police officers' decision to move Sessler to an adjacent location was likely a content-neutral limitation on the time, place, and manner of his speech.  The

[2]In the Complaint, Sessler defines "Public Spaces" as "public parks, public streets, public sidewalks, and public rights-of-way within the jurisdiction of the City."

district court found the limitation would likely satisfy intermediate scrutiny. Finding Sessler unlikely to succeed on the merits of his claim, the district court also determined each of the Dataphase factors applicable to its preliminary injunction analysis weighed in favor of denying Sessler's motion. Both parties appeal. Sessler challenges the district court's analysis in its entirety. The City challenges the finding that Street Fest was a traditional public forum.

## II. Standard of Review

"A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." Powell v. Ryan, 855 F.3d 899, 902 (8th Cir. 2017) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). We generally review the denial of a preliminary injunction for abuse of discretion and reverse "where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." Minn. Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864, 870 (8th Cir. 2012) (en banc). We review the district court's legal conclusions de novo. Johnson v. Minneapolis Park & Recreation Bd., 729 F.3d 1094, 1098 (8th Cir. 2013).

## III. Discussion

The First Amendment forbids laws "prohibiting the free exercise [of religion]; or abridging the freedom of speech . . . ; or the right of the people peaceably to assemble." U.S. Const. amend. I. The protections announced in the First Amendment show "a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" Boos v. Barry, 485 U.S. 312, 318 (1988) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)).

Here, Sessler seeks to protect his right to share his religious messages in public spaces within the City of Davenport. He requests that he not be restricted from "speaking with people, displaying signs, and/or distributing literature to those willing to receive it, in the public parks, public streets, public sidewalks, and public rights-of-way within the jurisdiction of the City." At first glance, he makes reasonable requests based on our First Amendment principles. After all, "[i]t is uncontested and uncontestable that government officials may not exclude from public places persons engaged in peaceful expressive activity solely because the government actor fears, dislikes, or disagrees with the views those persons express." Wood v. Moss, 572 U.S. 744, 756–57 (2014). "However, 'the fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please." Phelps-Roper v. Ricketts, 867 F.3d 883, 891 (8th Cir. 2017) (quoting Wood, 572 U.S. at 757).

Sessler challenges the City's Policy as applied to him. He alleges the Policy allows for an event, such as Street Fest, to give priority to the speech of vendors who are willing to pay a permit fee. In reviewing the Policy, we find it to be a content-neutral permitting scheme. The Supreme Court has recognized permitting schemes as valid means for the government "to regulate competing uses of public forums." Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 130 (1992) (noting that "any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication"). And, other courts assessing claims similar to Sessler's have noted that "[t]he right of free speech does not encompass the right to cause disruption, and that is particularly true when those claiming protection of the First Amendment cause actual disruption of an event covered by a permit." Startzell v. City of Philadelphia, 533 F.3d 183, 198 (3d Cir. 2008); see also id. at 198–99 (noting that the City's interest "in ensuring that a permit-holder can use the permit for the purpose for which it was obtained. . . .

necessarily includes the right of police officers to prevent counter-protestors from disrupting or interfering with the message of the permit-holder"). Although Sessler possesses a First Amendment right to communicate his messages in a public forum, he does not have the wholesale right to disrupt an event covered by a permit.

The parties primarily dispute whether the district court abused its discretion in determining Sessler failed to demonstrate a sufficient likelihood of success on the merits of his claim. Even if we assume for purposes of this appeal, without deciding, that Sessler has shown a likelihood of success on the merits, we find Sessler's inability to demonstrate a threat of irreparable harm heavily weighs against granting preliminary injunctive relief.

To justify prospective injunctive relief in this context, Sessler must, at minimum, establish he will suffer irreparable harm in the face of the City's Policy without the court's intervention. The failure of a movant to show irreparable harm is an "independently sufficient basis upon which to deny a preliminary injunction." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). Sessler's argument for preliminary relief is impaired by his inability to show with any likelihood that the Policy will be applied to him in the future. To establish the need for a preliminary injunction, the movant must show more than the mere possibility that irreparable harm will occur. A movant must show he is "likely to suffer irreparable harm in the absence of preliminary relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Sessler has not indicated he has any plans to apply to host an event or to be a vendor at an event governed by the Policy. And, Sessler did not apply to be a vendor at Street Fest. Further, Sessler has not shown any desire or plans to attend an event in the City that is governed by the Policy. Nor does he provide any concrete plans to engage in street preaching in the imminent future. Instead, Sessler vaguely alleges he plans to preach "within the City's Public Spaces" on "upcoming" days, "including but not limited to days in November 2018 through December 2022."

Aside from lacking specificity, these allegations push the scope of Sessler's request for preliminary relief well beyond the facts of Sessler's Complaint.

The facts as alleged by Sessler show that he was *allowed* to continue preaching in the City's public sidewalks and streets, just not those demarcated and secured for use by Street Fest in July 2018. And, although Sessler's Complaint is based on his removal from a festival governed by the City's Policy, Sessler does not provide any concrete plans to share his messages at future festivals in the City. Although his statement that he intends to preach in "Public Spaces" could, in certain situations, include public property for which a private entity obtained a permit, it is too speculative as to whether any location on which Sessler preaches in the future would be subject to the City's Special Events Policy. This type of "[s]peculative harm does not support a preliminary injunction." S.J.W. ex rel. Wilson, 696 F.3d at 779; cf. Duhe v. City of Little Rock, 902 F.3d 858, 866–67 (8th Cir. 2018), cert. denied, 139 S. Ct. 1178 (2019) (concluding plaintiffs lacked standing to challenge a permit ordinance because they "did not apply for a permit," were not "arrested or cited for violating the ordinance," and "failed to make a sufficient showing of a risk . . . . that the permit ordinance w[ould] apply to" their desired "course of conduct").

Ultimately, Sessler bore the burden of establishing that an "extraordinary remedy" such as a preliminary injunction was appropriate in his case. Watkins, 346 F.3d at 844. He did not meet his burden because he did not show he would suffer irreparable harm without prospective relief.[3] "[O]ur task at this point is not to decide

---

[3]Nor are we convinced that, if granted, Sessler's proposed injunction would meet the requirements of Federal Rule of Civil Procedure 65(d) (providing that an injunction must "state its terms specifically"). He proposes that the City be enjoined "from restricting and limiting his rights to peacefully share his message of faith by speaking with people, displaying signs, and/or distributing literature to those willing to receive it, in the public parks, public streets, public sidewalks, and public rights-of-

the merits of this case, but only to determine whether the district court abused its discretion in assessing 'whether the balance of equities so favors [Sessler] that justice requires the court to intervene to preserve the status quo until the merits are determined." Powell v. Noble, 798 F.3d 690, 702–03 (8th Cir. 2015) (quoting Dataphase, 640 F.2d at 113). Sessler has asked the district court to determine whether enforcement of the City's Policy violated his constitutional rights during Street Fest. Such a determination will eventually be made. However, Sessler has not demonstrated preliminary injunctive relief is warranted in his case.

We affirm the order of the district court.[4]

_____

_____

way within the jurisdiction of the City." Setting aside the fact that this request goes beyond the facts of his underlying Complaint, it is also true that "an injunction which does little or nothing more than order the defendants to obey the law is not specific enough." Daniels v. Woodbury Cnty., 742 F.2d 1128, 1134 (8th Cir. 1984). We are not convinced Sessler's request is more than an obey-the-law injunction. When asked about this issue during oral argument, Sessler was unable to alleviate our concerns.

[4]Since resolution of the forum issue raised by Defendants' cross-appeal is not necessary to support our decision, we decline to address the issue at this time.