# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1706
_____

Choreo, LLC

*Plaintiff - Appellee*

v.

Kevin Lors; Aaron Schomer; Joleen Scheer; Lindsey O'Neil; Atomi Financial Group, Inc., doing business as Compound Planning

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: September 17, 2025
Filed: January 12, 2026
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

In January 2025, Appellants Kevin Lors, Aaron Schomer, Joleen Scheer, and Lindsey O'Neil ("Four Advisors") resigned as senior financial advisors at the Des Moines branch of Choreo, LLC, a national investment advisory firm, and joined Appellant Atomi Financial Group, Inc., a competing investment advisory firm doing business as Compound Planning ("Compound") that was opening a new office in Des

Moines. A few weeks after the Four Advisors left, eight of the nine remaining Choreo financial advisors in Des Moines resigned in unison and joined Compound, which paid them lavish incentives to continue serving their former clients despite restrictive covenants in the Four Advisors' employment contract with Choreo.

Choreo quickly filed this lawsuit, alleging breach of three restrictive covenants by the Four Advisors, tortious interference with contract by Compound, and theft of trade secrets under federal and Iowa law by all Defendants. The district court granted Choreo's motion and entered a sweeping preliminary injunction. Defendants appeal. We have jurisdiction to review an interlocutory order granting a preliminary injunction. 28 U.S.C. § 1292(a)(1).

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959). The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary injunctive relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 22 (2008) (citations omitted; emphasis in original); see Sessler v. City of Davenport, 990 F.3d 1150, 1156 (8th Cir. 2021). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Here, the district court concluded that "[t]he coordinated departure of all senior wealth advisors, followed by the near-simultaneous resignation of the remaining eight investment advisors, has effectively decimated Choreo's Des Moines office, leaving the firm without the human capital necessary to maintain client relationships and deliver its services." We conclude the preliminary injunction record falls short of the showing required to establish that Choreo's alleged injuries cannot be compensated by an award of damages for Defendants' alleged breach of contract and tortious

interference absent extraordinary preliminary injunctive relief. Accordingly, we vacate the preliminary injunction and remand for further proceedings.

## I. Background

In 2022, a large private equity firm purchased Choreo, raised client fees, and reduced advisor compensation, causing about a third of the office's financial advisors to leave over the next few years. The Four Advisors resigned in January 2025, effective February 2025. Their Choreo employment contract contained three one-to-two-year restrictive covenants:

1. "I will not . . . directly . . . or indirectly . . . solicit, divert, take away or conduct any financial planning . . . with . . . any of [Choreo's] clients, customers or accounts" (the "No-Service/No-Solicitation" covenant). "Clients, customers or accounts" is defined as any clients the Four Advisors serviced or gained business information about in the last two years ("Covered Clients").

2. "I shall not . . . directly or indirectly . . . use or disclose to any party other than [Choreo] and its affiliates any trades secrets or other Confidential Information that I learned or obtained while an employee of [Choreo]" (the "No-Disclosure" covenant).

3. "I will not directly or indirectly solicit, attempt to solicit, or in any manner encourage any employee of [Choreo] to leave [Choreo]" (the "No-Recruitment" covenant). This covenant applied while the Four Advisors were still employed at Choreo and prohibited them from aiding anyone else in offering employment to Choreo's employees.

A few weeks after the Four Advisors left, eight of the nine remaining Choreo financial advisors resigned in unison and joined Compound. The Four Advisors also took three allegedly solicitous actions directed at Covered Clients. First, contrary to Choreo's instruction that it would handle the client transition process, they sent

former clients an email stating: "I'm writing to inform you that I have left Choreo, and since I have left the firm I am no longer servicing your accounts. My registered contact information at my new firm is below should you have any questions." Choreo informed Covered Clients of the Four Advisors' departure prior to their resignation becoming effective, but they did not tell clients where the Four Advisors had gone. Second, when one Covered Client contacted Lors for information, Lors responded with Compound's website, fee schedule, and two PDFs about how to transition. Third, each Advisor made posts on LinkedIn about their transition to Compound.

Within two weeks after the Four Advisors departed, Choreo's Des Moines branch lost over 100 clients to Compound representing $400 million in assets under management, approximately one-third of the branch's total business. The Four Advisors continued serving as financial advisors to the Covered Clients who switched to Compound. Defendants do not dispute that this violated the No-Service provisions. Rather, they contest this covenant's enforceability.

Choreo quickly filed suit and requested a temporary restraining order, which the district court denied for lack of a showing of immediate irreparable injury. Choreo then moved for a preliminary injunction which the district court granted, properly looking to the four Dataphase factors in determining whether to grant a preliminary injunction set forth in our controlling decision in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). The injunction bars the Four Advisors from servicing the Covered Client accounts, providing any information about their new employment to Covered Clients, using Choreo's confidential information for any purpose, and encouraging any employee of Choreo to quit during the period each restrictive covenant is in effect. It also bars Compound from using Choreo's confidential information or interfering with any Choreo employment agreements. Defendants timely appealed. The district court and this court denied their motions to stay the injunction pending appeal.

-4-

## II. Discussion

"We review the district court's decision to grant a preliminary injunction for abuse of discretion, with factual findings examined for clear error and legal conclusions considered *de novo*." Sleep No. Corp. v. Young, 33 F.4th 1012, 1016 (8th Cir. 2022) (quotations omitted). Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citation omitted). We consider four factors in determining whether to grant a preliminary injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase, 640 F.2d at 114.

We begin with the irreparable harm factor because "[t]he failure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction.'" Sessler, 990 F.3d at 1156 (quotation omitted). To show irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Dakotans for Health v. Noem, 52 F.4th 381, 392 (8th Cir. 2022). The party seeking preliminary injunctive relief must show a likelihood of irreparable harm in the future. Sessler, 990 F.3d at 1156. The failure to show irreparable harm is, by itself, a sufficient basis to deny a preliminary injunction. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

The district court's finding of irreparable harm is based on (1) Choreo's further loss of customer relationships from Compound's ongoing client poaching and (2) the destruction of Choreo's Des Moines branch resulting from Defendants' violations of the No-Recruitment provision. We conclude this does not meet the required showing.

**(1)** We have held that the permanent loss of customer goodwill *can* constitute irreparable injury.  Iowa Utils. Bd. v. FCC, 109 F.3d 418, 426 (8th Cir. 1996).  But nothing in the record demonstrates irreparable harm will occur absent preliminary injunctive relief in this case.  "Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered."  Wildhawk Invs., LLC v. Brava I.P., LLC, 27 F.4th 587, 597 (8th Cir. 2022).  Choreo charges clients a percentage fee based on the size of their account.  Both the amount of assets attributable to the allegedly stolen clients and Choreo's fee table are in the record.  From this data and the evidence developed at summary judgment or after trial on the merits of Choreo's claims, the court can determine or reliably estimate the annual fees Choreo would receive from clients Compound poached.  Indeed, the district court referred to financial harm from the loss of clients as "calculable."  True, this calculation might not account for incidental benefits of client relationships such as referrals.  But the financial harm from lost client revenues will not be so uncertain that it renders the damages incalculable and therefore irreparable.  See Washington Tr. Advisors, Inc. v. Arnold, 646 F. Supp. 3d 210, 221 (D. Mass. 2022) ("the financial services industry is uniquely skilled at computing the economic value of a given client.").

For example, in MPAY Inc. v. Erie Custom Comp. Apps., Inc., 970 F.3d 1010 (8th Cir. 2020), we rejected plaintiff's argument that financial harm from losing customers is incalculable and therefore irreparable, noting that the estimate in the record of $580,000 in lost annual fees from those customers demonstrated that the lost profits were quantifiable. Like Choreo, plaintiff argued that the amorphous loss of goodwill and reputation was irreparable harm supporting preliminary injunctive relief. We rejected this argument as uncorroborated and therefore too speculative to establish irreparable harm and affirmed the denial of a preliminary injunction. Similarly in Mgmt. Registry, Inc. v. A.W. Cos., 920 F.3d 1181, 1183 (8th Cir. 2019), we found that plaintiff had a potentially viable damages theory from the loss of goodwill but the little evidence in the preliminary injunction record cut against a finding of incalculability, as the plaintiff had estimated lost revenues to be $65,000

per week. In both cases, as here, the plaintiff did not persuasively explain why the estimated money damages did not adequately compensate them for their losses.

Choreo argues that declarations by two of its employees adequately explain why its alleged harm from loss of goodwill is incalculable. But the declarations are conclusory, stating Choreo has lost client goodwill and the resulting harm is incalculable, but not explaining why the loss defies calculation. The employees assert that "[t]he departure of these clients has destabilized Choreo's business by undermining the notion that these client relationships belong to Choreo." But if actionable, the client fees lost because Defendants' conduct made clients willing to follow their existing investment advisors to Compound is calculable.

**(2)** Choreo argues it was irreparably harmed when Defendants' allegedly wrongful conduct left its Des Moines office with just one employee and unable to serve its remaining customers. The fatal problem with this argument is that even if this harm is irreparable, it has already happened and will not be remedied by the preliminary injunction. When Choreo filed this action, it requested injunctive relief preventing the eight employees who had not left from leaving. The district court denied that relief. All but one of Choreo's Des Moines investment advisors had left when the district court granted the preliminary injunction. There is no evidence in the record that Defendants did or will attempt to recruit the remaining employee. Therefore, future harm resulting from Choreo's understaffing will occur with or without a preliminary injunction and cannot provide the basis for preliminary equitable relief. Whether a permanent injunction will be appropriate equitable relief to prevent future irreparable harm will depend in large part on future events such as Choreo's success assuming it intends to maintain a branch office in Des Moines.

In sum, because the preliminary injunction does not prevent irreparable harm that cannot be calculated and remedied after a determination of Choreo's breach of contract and tortious interference claims on the merits, the district court abused its

discretion in granting it.  Accordingly, we vacate the district court's order granting preliminary injunctive relief and remand for further proceedings consistent with this opinion.

_____